# CHARLESTON.

STATE *ex rel.* PUBLIC SERVICE COMMISSION V. BALTIMORE & OHIO R. R. Co.

## Submitted May 11, 1915.   Decided June 1, 1915.

1. CONSTITUTIONAL LAW—*Delegation of Power—Public Service Commission—Validity of Statute.*

   Section 5, of chapter 9, Acts of the Legislature, 1913, is not an invalid attempt to delegate to the Public Service Commission the power specifically limited by section 9, Article XI, of the Constitution, to the Legislature to ''from time to time, pass laws, applicable to all railroad corporations in the State, establishing reasonable maximum rates of charges for the transportation of passengers and freights'', etc.   (p. 403).

2. SAME.

   Said section but confers upon the Public Service Commission powers of a quasi-legislative and quasi-judicial nature, limited to intrastate rates, similar to those conferred by Congress upon the Interstate Commerce Commission, limited to interstate transportation, and to administer and carry into effect the general laws of the State, regulating railroads and other public service corporations, enacted in pursuance of the Constitution.   (p. 404).

3. SAME.

   While it is now established law by state and federal decisions, that the making of reasonable maximum rates for general application is primarily a legislative function, it is equally settled that legislative control over railways and other public service corporations may, within constitutional limitations, be delegated to Public Service Commissions, the reason for such regulative laws being the distinction between prescribing rates generally, without complaint, controversy or investigation, and directing the observance of a

particular rate or schedule after judicial or quasi-judicial investigation of its propriety.  (p. 407).

4.  CARRIERS—*Rates—Operation of Statute—Public Service Commission.*
    Chapter 41, Acts of the Legislature, 1907, limiting railroads to the rate of two cents per mile for carrying intrastate passengers and baggage remains the paramount law, binding upon the carrier, until in the first instance upon application by the carrier, or by some one injuriously affected thereby, or upon the initiative of the Public Service Commission, such rate has been investigated by the Commission and judicially determined to be unreasonable or confiscatory as to a particular carrier, and therefore invalid, and until then or until such law has been otherwise amended or lawfully nullified, the Public Service Commission has jurisdiction, as prescribed by the act creating it, to compel observance by a carrier of such law. (p. 408).

5.  CORPORATIONS—*Regulation—Public Service Commission—Construction of Statute.*
    Since the decision of this Court in *Coal & Coke Railway Co.* v. *Conley,* 67 W. Va. 129, the Act of 1913, creating the Public Service Commission, inaugurated a new system of regulating public service corporations, and that act must be read and interpreted along with chapter 41, Acts of 1907, and all other previous regulatory statutes, not repealed thereby, as in pari materia therewith, and as together constituting the law of the State regulating and controlling all public service corporations.  (p. 408).

6.  CARRIERS—*Regulation of Rates—Public Service Commission—Injunction.*
    Until the Public Service Commission, pursuant to the authority conferred upon it by said act, has investigated and determined that a particular rate complained of is unreasonable, and invalid as to a particular carrier, the courts cannot interfere by injunctive process, or otherwise, to stay the hand of the Commission in the performance of its proper duties and functions.  (p. 409).

Mandamus by the State, on the relation of the Public Service Commission, against the Baltimore & Ohio Railroad Company.
                                     *Peremptory writ awarded.*

*A. A. Lilly,* Attorney General, *Frank Lively,* Assistant Attorney General, and *S. B. Avis,* for petitioner.

*Conley & Johnson,* for respondent.

MILLER, JUDGE:

By mandamus relator seeks to enforce obedience by defend-

ant of its special supplemental order, of April 26, 1915, requiring it to obey, comply with, and conform to the provisions of chapter 41, Acts of the Legislature of 1907, limiting railroads ''in their charges for the transportation of any person with ordinary baggage, not exceeding one hundred pounds in weight, to the sum of two cents per mile, or fractional part of a mile,'' etc., and prohibiting it from putting into effect its proposed increased passenger rates, fares and charges, and its proposed regulations and practices, stated and contained in certain tariffs and schedules, filed by it on April 1, 1915, and from making or putting into effect any other or different passenger rates, fares, regulations and practices, from those prescribed in said chapter, and now in practice, in so far as they relate to the transportation of persons with ordinary baggage, between points and stations within the State of West Virginia, until the 1st day of June, 1915, unless otherwise ordered by the Commission.

The order referred to was supplementary to an order entered on April 24, 1915, which was supplementary to a prior order, entered on April 20, 1915. By the first of said orders the Commission took note of the filing of said tariffs and schedules, on or prior to the 1st day of April, 1915, and of the proposal of the defendant to put them into effect May 1st, 1915, and that such passenger rates, fares and charges were in excess of those allowed by the act of 1907. And in view of said proposed changes it was considered and ordered that the Commission should enter upon a hearing or investigation concerning the propriety and lawfulness of said new tariffs and schedules, and being of opinion that the defendant should obey and comply with the provisions of said act until the Commission should have heard, investigated and finally determined the propriety of said increases, and the lawfulness of the proposed passenger rates, fares, charges and regulations, it was ordered that defendant be forthwith served with a copy of said order, and that it be required to appear before said Public Service Commission on April 24, 1915, and then and there present for consideration any reasons it might desire to present why it should not obey said statute, and why it should not be prohibited from putting into effect such pro-

posèd increased passenger rates, fares, etc., for a reasonable time, until the Commission should have heard, investigated and finally determined the propriety thereof.

On the day so appointed the defendant entered a special appearance, solely and only for the purpose of objecting to any further proceeding or action on the part of the commission in respect of or in relation to the matters referred to, and filed a statement in writing setting out the grounds of its objection to the jurisdiction of the Commission of the matters and things under investigation and hearing. On consideration whereof, the Commission was of opinion and so ordered, that the grounds of objection were not sufficient, and that it had jurisdiction of the matters therein referred to, and that said special appearance be rejected. Thereupon, on request of the counsel for defendant, additional time was given until April 26, 1915, to enable it to determine what further appearance, if any, it should make in said investigation and hearing, and on the day to which said hearing was continued, defèndant failing to enter any further appearance, the second supplemental order, of April 26, 1915, was duly entered.

By respondent's special appearance, on April 24, 1915, jurisdiction was challenged upon the following grounds: First: That relator was without lawful power or authority, (a) to make any order affecting passenger rates, (b) to require appearance by respondent, (c) to require respondent to present reasons why it should not obey or comply with the provisions of chapter 41, of the Acts of 1907, or (d) to make any order prohibiting respondent from putting into effect and operating under the proposed increased passenger rates, fares and charges, referred to in the order of April 20, 1915.

Second: That on April 23, 1915, respondent had instituted its suit in equity in the circuit court of Kanawha County, West Virginia, against the Attorney General, and all the prosecuting attorneys of the several counties of said state, through which respondent's lines of railroad run, and against the several members of the Public Service Commission, to enjoin them and each of them from instituting or in any manner prosecuting respondent, or any of its agents, officers, or employees, for alleged violations of said act, and from in

any manner whatsoever interfering with or impeding respondent from putting into force and operating thereunder the rates, tariffs, fares, etc., aforesaid; and attacking in said suit said·chapter 41, of the Acts of 1907, as unconstitutional, null and void, and exhibiting with said special plea or appearance a copy of said bill, and alleging that process thereon of said court had been served on relator on April 23rd, 1915, and that notice had been given relator that application for said injunction would be made to said court on May 3rd, 1915. Wherefore, it was alleged, the Public Service Commission could take no action. And the prayer of said special appearance was that respondent be not required to further appear or answer.

By demurrer, motion to quash, and return to the alternative writ, respondent has presented and relies on the same grounds as a defense to the writ.

It is conceded that the Public Service Commission, purely a creature of the statute, possesses only such powers and authority in the premises as are expressly conferred, or are necessarily implied, in order to properly perform its functions and to carry into effect the plans and purposes of the act creating it. *United Fuel Gas Co.* v. *Public Service Commission,* 73 W. Va. 571. As the statute was construed in that case the functions of the Commission as an administrative board are quasi-judicial and quasi-legislative.

The first ground of attack, in orderly sequence, is alleged want of constitutional authority in the Legislature to delegate to the Public Service Commission the power of making rates. And it is contended that if the Legislature has attempted to confer such authority and jurisdiction upon the Public Service Commission, the act to that extent is void and inoperative, on constitutional grounds.

Section 9, of Article XI, of the Constitution, relied on, provides: "Railroads heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as shall be prescribed by law; *and the Legislature shall, from time to time, pass laws, applicable to all railroad corporations in the State, establishing reasonable*

*maximum rates of charges for the transportation of passengers and freights,* and providing for the correction of abuses, the prevention of unjust discriminations between through and local or way freight and passenger tariffs, and for the protection of the just rights of the public, and shall enforce such laws by adequate penalties.''

This section is the same as originally adopted in the Constitution of 1872. By acts of the Legislature 1872-3, chapter 227, now contained in chapter 54, Code 1913, serial sections 2996, etc., the Legislature, in the exercise of this constitutional power, classified all railroads and undertook to establish reasonable maximum rates and charges for the transportation of passengers and freights, and to limit railroads thereby. The law as thus enacted remained undisturbed until the passage of chapter 41, Acts of 1907, limiting all railroads to two cents per mile, or fractional part of a mile, except railroads under fifty miles in length, and imposing penalties for violations of the statute, and repealing all acts or parts of acts inconsistent therewith. Thus the maximum rate of two cents per mile, instead of the rates fixed by Acts of 1872-3, was established.

That the Legislature by these statutes undertook to comply with the mandate of the Constitution is manifest, and nowhere has it undertaken to delegate to any board or Public Service Commission its legislative authority under the Constitution to establish reasonable maximum rates, or to promulgate and establish tariffs and rates for passengers or freights, to have general application to all railroads. Chapter 9, of the Acts of the Legislature of 1913, establishing the Public Service Commission, and prescribing its powers and duties, unless in the particulars pointed out by counsel for respondent, neither abrogates nor delegates legislative authority imposed by the Constitution, and is but the reasonable exercise by the Legislature under said section of the Constitution, of its authority to regulate tariffs and rates and to provide ''for the correction of abuses, the prevention of unjust discriminations between through and local or way freight and passenger tariffs, and for the protection of the just rights of the public'', etc.

Section 5, of that act, relied on by relator as warranting

the relief sought, is as follows: ''The commission is hereby given the power to investigate all methods and practices of public service corporations, and to require them to conform to the laws of the state. The commission may compel obedience to its lawful orders by proceedings of mandamus or injunction or other proper proceedings in the name of the state in any circuit court having jurisdiction of the parties or of the subject matter, or the supreme court of appeals direct, and such proceedings shall have priority over all pending cases. The commission may change any intrastate rate, charge or toll which is unjust or unreasonable and may prescribe such rate, charge or toll as would be just and reasonable, and change or prohibit any practice, device or method of service in order to prevent undue discrimination or favoritism as between persons, localities or classes of freight; provided, that the commission shall not reduce any rate, toll or charge within ten years after the completion of the railroad or plant to be used in the public service below a point which would prevent such public service corporation, person, persons or firm from making a net earning of eight per cent per annum on the cost of the construction and equipment of said railroad or plant. But in no case shall the rate, toll or charge be more than the service is reasonably worth, considering the cost thereof.

''Every order entered by the commission shall continue in force until the expiration of the time, if any, named by the commission in such order, or until revoked or modified by the commission, unless the same be suspended, modified, or revoked by order or decree of a court of competent jurisdiction.''

We fail to find in this section any delegation of legislative power, specifically imposed by the Constitution on the Legislature. Powers conferred by this act upon our Public Service Commission are similar in character to those conferred by Congress from time to time upon the Interstate Commerce Commission, and by many of the states upon commissions of like character, for the control and regulation of public service corporations.

In the early history of the Interstate Commerce Commission, though not specifically conferred, jurisdiction was

assumed not only to investigate and determine and report whether a specific rate was unreasonable, but to order and put in force such rate as the Commission found to be reasonable. The question as to such authority seems to have been left in some uncertainty until the noted case of *Interstate Commerce Commission* v. *Cincinnati, N. O. & T. P. Ry. Co.,* 167 U. S. 479, opinion by Mr. Justice Brewer. After having reviewed the previous cases this learned judge sums up as follows: "Our conclusion, then, is that Congress has not conferred upon the Commission the legislative power of prescribing rates either maximum or minimum or absolute. As it did not give the express power to the Commission it did not intend to secure the same result indirectly by empowering that tribunal to determine what in reference to the past was reasonable and just, whether as maximum, minimum, or absolute, and then enable it to obtain from the courts a peremptory order that in the future the railroad company should follow the rates thus determined to have been in the past reasonable and just."

As is apparent the basis of this decision was that the powers denied the Commission were not specifically conferred by the Act of Congress. Subsequently by the amendment of 1906, known as the Hepburn act, the Commission was given further power, after finding an existing rate unreasonable, to fix a reasonable rate for the future, and to enforce observance thereof; and later by the amendment of 1910, known as the Mann act, the power of the Commission was enlarged so as to include the suspension before going into effect of any increase in rates announced by a carrier, for certain limited periods, pending its investigation of the reasonableness of such rates.

By the act creating the Public Service Commission of this state, as originally passed, substantially all the powers conferred by Congress upon the Interstate Commerce Commission, respecting interstate carriers, except the power to suspend the operation of rates, or changes in rates, were conferred upon the relator, in respect to intrastate railways. And by a recent amendment of section 9, of said act, by chapter 8, of the Acts of 1915, not in force at the time these proceedings were begun, the Commission was empowered, by

simple protest, or by an order, to suspend pending a hearing or final decision of the matter, any proposed modification, change, or annulment of any pre-existing rate.

While it is conceded, as a general proposition, that the making of railroad rates or reasonable maximum rates, for general application, primarily at least, is a legislative function, nevertheless it seems to be now established law, by state and federal decisions, that legislative control over railways and other public service corporations may, within constitutional limitations, be delegated to Public Service Commissions. 2 Willoughby on the Constitution, section 778, and cases cited in notes; 4 R. C. L., pages 620, etc., paragraphs 93 to 96, inclusive; Beale & Wyman, Railroad Rate Regulation, sections 1032 to 1035, inclusive.

The reason behind all such regulatory laws and boards or commissions is the clear distinction to be observed between the prescribing of rates generally without any complaint, controversy, or investigation, and directing the observance of a certain particular rate or schedule, after judicial or quasi-judicial investigation of its propriety. 1 Drinker on the Interstate Commerce Act, pp. 394, 395, and cases cited; Beale & Wyman on Railroad Rate Regulation, *supra,* section 1034. In *Interstate Commerce Commission* v. *Chi., R. I. & Pac. Ry.,* 218 U. S. 88, the power of the Interstate Commerce Commission, to investigate and pronounce unreasonable and discriminatory existing or proposed new rates, and to prescribe other rates in place thereof, was distinctly decided. See, also, *Interstate Commerce Commission* v. *Perry,* 3 I. C. R. 740, where, prior to the amendments of the federal act, power in the Commission was asserted not only to find that an existing rate was unreasonable, and forbid its continuance, but also to ascertain, order and enforce a rate that was reasonable, and where the reasons for the right to exercise such authority in special instances are dilated upon by Veazey, Commissioner.

We are of opinion, therefore, that there is no merit in the contention that the Public Service Commission is without constitutional or legislative authority to exercise the powers specifically conferred upon it by the act of the legislature creating it. In exercising those powers and functions it is not exercising powers specifically confined to the Legisla-

ture, but those quasi-legislative and quasi-judicial, and administrative in character, and such powers as we held in *United Fuel Gas Co.* v. *Public Service Commission, supra,* the Legislature has constitutional authority to delegate.

The second ground urged in resistance of the writ is that the present statute, chapter 41, Acts 1907, in pursuance of the constitutional mandate, is the paramount law of the state, is still in force, and that the relator has no power to change or modify that law, or make any new or different rate for carriers of passengers. And while affirming and urging with persistency this proposition, in opposition to the authority and jurisdiction asserted by the Public Service Commission, counsel for respondent affirm with equal emphasis, the cognate proposition, that as to the railway company the statute is invalid and without binding force or authority, even prima facie, upon it, because, as it has attempted to determine for itself, the maximum rate fixed by the statute is unreasonable and confiscatory, and that regardless of this paramount law, it may with impunity and without application to or authority granted by the Public Service Commission, or by any judicial process, promulgate and put into effect new tariffs and rates, and that the Commission is without power or jurisdiction over it in the premises, to investigate or decide whether the maximum rate prescribed by the statute is reasonable or confiscatory, or to make any order in the premises.

But for the jurisdiction conferred upon the Public Service Commission by the Act of 1913, and upon principles enunciated in *Coal & Coke Railway Co.* v. *Conley,* 67 W. Va. 129, on showing to the satisfaction of the court that the maximum rate prescribed by the statute, as to it, is confiscatory, equity would have jurisdiction, on that ground, to enjoin, for the time being, enforcement of the statutory rate. But that decision is no authority for the proposition now advanced in this case, that before judicial inquiry injunction will lie against the public officers from enforcing the statute. True, a preliminary injunction was granted by the circuit court in that case, but the propriety of that injunction was not presented here, and the practice finds no justification in the decision of this court in that case.

Since the decision of the Coal & Coke Railway Case, how-

ever, we have the Public Service Commission, with the powers, jurisdiction and authority conferred by statute upon it. It is not contended, but quite the contrary, that the act creating this Commission repealed chapter 41, Acts of 1907. It is conceded on both sides of this controversy, that that act is still in force, and being in force it must be construed as a part of the new system inaugurated by the act creating the Public Service Commission for the regulation and control of public service corporations, including railway companies, and that the new act must be read in pari materia with all previous legislation relating to the subject of rates and regulative control. *McChord* v. *L. & N. Ry. Co.*, 183 U. S. 483; *Coal & Coke Railway Co.* v. *Conley, supra*, point 38 of the syllabus.

While we do not find in the act relating to the Public Service Commission, in force at the time these proceedings were inaugurated, specific authority to suspend existing or new rates, we do find in section five above quoted, power to investigate all methods and practices of public service corporations, *and to require them to conform to the laws of the state.* It was pursuant to this authority that relator entered upon the investigation recited in the original and special supplemental orders, and summoned respondent before it, and the command of the alternative writ, sought to be made peremptory, as we have seen, commanded respondent to obey and comply with and conform to the provisions of said chapter 41, of the Acts of 1907, and to prohibit it from putting into effect the proposed increased passenger rates, and from making or putting into effect any other or different passenger rates than those prescribed in said acts until the 1st day of June, 1915, unless otherwise ordered by the Commission.

If it be true as contended that the statutory rate for passengers and baggage, as to respondent, operates to deprive it of a reasonable and lawful return for the services rendered, and therefore confiscatory, the proper construction of the act creating the Public Service Commission, in our opinion, requires that resort be first had to that commission as the primary forum in which to have investigated and determined those questions. That Commission being given the power and authority to investigate and to change any intrastate charge or toll which is unjust or unreasonable and to prescribe a

rate that will be just and reasonable, must be construed to include the power to change the rate prescribed by the statute, if such maximum rate is in fact confiscatory and void on constitutional or other grounds. In our opinion this power must necessarily have been included in the plan and scheme of the Legislature in creating the Commission; otherwise corporations so affected would be put beyond the control of the Public Service Commission, while other corporations as to whom the rate prescribed by statute is not confiscatory would remain subject to its control. In our opinion the statute binds and controls respondent until it has been lawfully determined by the Public Service Commission, or afterwards by a court of competent jurisdiction, that the prescribed rate is confiscatory. And while the Commission may not have been empowered, at the time these proceedings were begun to suspend a rate lawfully promulgated, it has the specific power given by the provision of the statute quoted, to require respondent to conform to the law of the state, and this includes jurisdiction and power to require it to adhere to the rate prescribed by the statute, until by lawful and orderly proceedings under the statute, by application to the Public Service Commission, that rate has been lawfully suspended or changed, for until then that law must be regarded the law of the state enforceable against the railway company.

As thus construed the statute imposes no hardship upon or barrier to the speedy determination of respondent's rights in the premises. The remedy given by this statute is more summary and is calculated to lead to better and quicker results because of the peculiar powers and functions of the Commission, than resort to a court of equity in the first instance, whose powers are limited to the determination whether a specific rate is unreasonable, and it is without power or jurisdiction to determine what rate would be reasonable, and to enforce the same.

According to the original writ the Public Service Commission had already entered upon the investigation of respondent's proposed new schedules and rates. Since the establishment of the Interstate Commerce Commission the federal courts have declined to take jurisdiction to test the validity of interstate rates pending proceedings for the same purpose

before the Interstate Commerce Commission, that forum being the primary jurisdiction to which resort should be made for relief against unreasonable and confiscatory rates. *B. & O. R. Co.* v. *U. S. ex rel. Pitcairn Coal Co.,* 215 U. S. 481; *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *McChord* v. *L. & N. R. Co., supra; Cincinnati N. O. & T. P. R. Co.* v. *Interstate Commerce Commission,* 162 U. S. 184; *Meeker* v. *Lehigh Valley R. Co.,* 162 Fed. 354; *Atlantic Coast Line R. Co.* v. *Macon Grocery Co.,* 166 Fed. 206; *Macon Grocery Co.* v. *Atlantic Coast Line R. Co.,* 215 U. S. 501; *Robinson* v. *B. & O. R. R. Co.,* 64 W. Va. 406; *Coal & Coke Ry. Co.* v. *Railway Co.,* 67 W. Va. 448. In our opinion the rules and principles of these decisions should be applied.

Not only is the right given to respondent to apply for relief in the first instance to the Public Service Commission, a forum having quasi-legislative and quasi-judicial powers, but if aggrieved by the entry of any final order of the Commission affecting it, it may apply to this court for suspension of such final order, and for a full hearing upon the merits of its case as prescribed by section 16 of the Public Service Commission act, and as interpreted and construed by this court in *United Fuel Gas Co.* v. *Public Service Commission, supra,* or as there indicated, by original application to any other court having jurisdiction, to have determined the reasonableness of the rates as fixed and order to be put into effect by the Public Service Commission.

Some of the propositions advanced by counsel for the relator, supported by many federal supreme court decisions, in support of the primary jurisdiction of the Public Service Commission are: (1) That rate making is primarily a legislative function; (2) that there is no distinction between the exercise of this function directly by the legislature or mediately through a Commission; (3) that injunction does not lie against the exercise of legislative function, and (4) that injunction does not lie against the making of a rate, or against a Commission before the rate is made. We think it will be unnecessary to enter upon any other or further discussion of these propositions; and as the cases cited in support of them are so numerous, even a citation of them here would overburden this opinion.

What has now been said we deem sufficiently comprehensive of all propositions relied upon by respondent in resistance of the writ, and in affirmance of these propositions relied upon by the relator, and we are of opinion that the peremptory writ prayed for should be awarded, and it will be so ordered.

*Peremptory writ awarded.*