WERGIN and others, Appellants, vs. Voss, Respondent.

*January 12—February 6, 1923.*

*Nuisance: Veterinary hospital: Injunction: When granted: Courts:
Judicial notice: Municipal ordinances: Record.*

1. A veterinary hospital is comparable to a livery stable, which is
   generally held not to be a nuisance *per se,* but either may be
   so maintained and operated as to become a nuisance which
   equity will enjoin.
2. Where defendant proposed to erect a veterinary hospital on his
   premises, a finding of the court that the building would not
   be a nuisance if properly conducted precluded relief by way
   of injunction, because equity will enjoin a threatened nui-
   sance, public or private, only where a nuisance inevitably
   will result from the act it is sought to enjoin. *Cunningham
   v. Miller,* 178 Wis. 22, distinguished.
3. Sec. 4137, Stats., as amended by ch. 390 of the Laws of 1921,
   authorizing municipal courts to take judicial notice of ordi-
   nances, does not authorize the supreme court, in reviewing
   a decision of the lower court, to take judicial notice of such
   ordinances.
4. Where a municipal court takes judicial notice of an ordinance
   of a city in which it has jurisdiction, it is suggested that it
   find as a fact the existence of the ordinance to complete the
   record for review by the supreme court.

APPEAL from a judgment of the municipal court of
Langlade county: ARTHUR GOODRICK, Judge. *Affirmed.*

This is a suit in equity to restrain the defendant from
erecting a proposed veterinary hospital on certain lots owned
by him in the northeast corner of block 21 in the city of
Antigo. The proposed construction may best be described
in the following language of the trial judge:

"The plans and drawings of the building have been
offered in evidence, from which it appears that the building
will be 36 x 60 with cement floors, walls built of tile with
two air spaces, the outside stucco, the front of artistic
design with glass doors, the building will be neat and at-
tractive in appearance. Inside the defendant will have his
veterinary office in the southeast corner. Immediately back

of that there will be a room for his drugs and medicines. Back of that will be a room for operating upon horses, and back of that two box stalls. Through the center of the building will be a tight partition separating the east from the west side. On the west side is located six ordinary stalls for horses. In the front or southwest will be a large room used as a garage for the doctor's automobile in the summer and hitching-up room for his horses in the winter. On the west side of the building about one third the way from the north end will be a tight room for the purpose of storing manure, with an outside door for emptying the bin and hauling it away. The building will have cement floors and gutter connections with the city sewer with traps, and arranged that the stalls and floor and gutter will be washed with hose and water and kept clean and sanitary. A modern system of ventilation will be installed, taking in fresh air near the ceiling of the rooms on the main floor and carrying off the bad air from the floor through the ceiling to the top of the building. The floors will be painted with cement paint to facilitate the washing and prevent the cement absorbing the secretions of the animals. The building will be set back on the defendant's lot something like twenty-six or twenty-eight feet from the sidewalk so that the front of the building will not obstruct the view of the building line of other buildings to the east. It is proposed to erect it within three or four feet of *Mrs. Talaraczyk's* property east and within a few feet on the north of the rear end of *James Chadek's* place. The rear of defendant's residence will be about twenty feet from the building on the west. These plans have been submitted to the state industrial commission and have been approved with suggestions and have also been approved by the state board of health and the city health officer of the city of Antigo. The nearest residence to this proposed building will be *Mrs. Talaraczyk's* immediately east, which will be some fourteen or fifteen feet away. The defendant's house then comes next, being twenty feet, and plaintiff *Chadek* forty feet.

"It further appears that this building is being erected by the defendant for the purpose of his personal convenience in his business as a veterinary surgeon, giving him an office and medicine room, one room for the purpose of a garage

in the summer and a hitching-up room in the winter where he can hitch up his teams inside, and for the purpose also of accommodating his driving horses which he needs in the winter when he is unable to drive his automobile. That he has four driving horses and two or three colts. That he will probably maintain during the winter five driving horses in this barn. That there will be very few horses in the barn during the summer season. That he has included in the building an operating room and two box stalls to give him a place where he can handle and treat cases which might be difficult to handle and treat at their home barns.

"It appears that ninety per cent. of the defendant's business in the treatment of animals or horses is done at the home barn of the animal, that the horses are seldom brought to the veterinary's barn or place of business, but they are occasionally."

The court found as a fact "that said location, where the proposed building is to be erected, is not in a strictly residential district." "I further find that the premises in question, upon which the proposed building is to be erected, are close to the business section and are not in a location where the residential character of the district is exclusive, but in a location where the said residential character is giving way and business is breaking in, and that this location is on the border line between the business and residential section of this district."

Also: "I find and am constrained to so hold, as facts, that this building proposed to be erected in the manner described will not be a private nuisance and that no offensive odors will emanate therefrom which will be detrimental to or injure the health or comfort of any resident, if properly kept, and that the erection of said building as designed will not *ipso facto* depreciate the value of the property in that immediate vicinity."

From a judgment in favor of the defendant plaintiffs bring this appeal.

For the appellants there was a brief by *Whiting & Dempsey* of Antigo, and oral argument by *A. N. Whiting*.

For the respondent there was a brief by *Morson & Reinert* of Antigo, and oral argument by *H. F. Morson*.

OWEN, J.   The proposed building, the erection of which is sought to be restrained, is to be used by the defendant as a veterinary hospital.   So far as its alleged objectionable features are concerned it is comparable to, and certainly does not more nearly approximate a nuisance than does, a livery stable.   It seems to be pretty well settled that a livery stable is not a nuisance *per se*. 20 Ruling Case Law, 414; 29 Cyc. 1176; 2 Wood, Nuisances (3d ed.) § 594; *Rounsaville v. Kohlheim,* 68 Ga. 668; *Kirkman v. Handy,* 30 Tenn. 406; *Albany Christian Church v. Wilborn,* 112 Ky. 507, 66 S. W. 285.   As was said in *Kirkman v. Handy, supra,* "We have been referred to no case in which a stable of any sort, whether public or private, wherever situated, is held to be *ipso facto* a nuisance."   But it is well recognized that a stable may be so maintained and operated as to become a nuisance, and equity will not hesitate to enjoin the operation and maintenance of a stable in a manner which constitutes it a nuisance.   See note on p. 959, 49 L. R. A. N. S.

The instant case presents an application to a court of equity to restrain a threatened or prospective nuisance. While a court of equity may enjoin a threatened or anticipated nuisance, public or private, it should do so only where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is ought to enjoin.

"The general rule is that an injunction will only be granted to restrain an actual existing nuisance; but where it can be plainly seen that acts which, when completed, will certainly constitute or result in a grievous nuisance, or where a party threatens, or begins to do, or insists upon his right to do certain acts, the court will interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the court to form an opinion as to the illegality of the acts complained of, and the irreparable injury which will ensue." *Adams v. Michael,* 38 Md. 123.

See note found in 7 A. L. R., p. 749, from which we excerpt the following:

"Generally the court ought not to interfere where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized." "To authorize an injunction it must be established by satisfactory evidence that the threatened or apprehended injury will probably result." "The plaintiff must make out a strong case of probability that the apprehended mischief will arise." "A showing of probable or contingent injury is insufficient. The injury must be inevitable and undoubted."

Tested by these rules, the judgment of the lower court cannot be disturbed, in view of the finding that "this building, proposed to be erected in the manner described, will not be a private nuisance and that no offensive odors will emanate therefrom which will be detrimental to or injure the health or comfort of any residents, if properly kept, and that the erection of said building as designed will not *ipso facto* depreciate the value of the property in that immediate vicinity."

The evidence is quite persuasive that the defendant is taking every precaution to render the building sanitary and inoffensive to adjacent property owners. We think it quite clear that the contemplated injury does not appear with that degree of certainty necessary to justify the interference of a court of equity at this time. If in the course of time the operation and maintenance of the hospital shall become offensive and actual damages result to neighboring property owners, another and different question will be presented.

Appellants place great reliance upon the case of *Cunningham v. Miller,* 178 Wis. 22, 189 N. W. 531, where this court upheld a judgment of the circuit court perpetually enjoining and restraining the defendant from operating an undertaking or embalming establishment. In that case,

however, the trial court affirmatively found that the operation of the undertaking establishment in the locality resulted in injury to plaintiff's property, and the result of its actual operation constituted a nuisance which should be abated. The two cases are not at all parallel. In that case the lower court found that the actual operation of the undertaking establishment resulted in a nuisance. In this case the lower court refused to find that the contemplated construction of the veterinary hospital amounted to a threatened or prospective injury to the plaintiffs or their property.

In the consideration of the case thus far we have confined ourselves to common-law principles. Speaking of a livery stable, the United States supreme court, in *Reinman v. Little Rock,* 237 U. S. 171, 176, 35 Sup. Ct. 511, said:

> "Granting that it is not a nuisance *per se,* it is clearly within the police power of the state to regulate the business and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law, provided this power is not exerted arbitrarily, or with unjust discrimination, so as to infringe upon rights guaranteed by the Fourteenth amendment."

To bring this case within the principle there announced, appellants place some reliance upon a pretended ordinance of the city of Antigo which declares the section here in question to be a residential district and prohibits the erection of certain classes of buildings within that district.

Upon the trial appellants introduced a typewritten document which purported to be an ordinance of the city of Antigo. The offer, however, was not accompanied with any proof of the adoption of the ordinance by the common council or of its publication. The proof failed to establish the fact that it was an ordinance of the city. Our attention is called to the provisions of sec. 4137, Stats., as amended by ch. 390 of the Laws of 1921, which provides that "municipal courts may take judicial notice of ordinances in cities

Wergin v. Voss, 179 Wis. 603.

·in which they have jurisdiction." It is claimed that by virtue of this provision it was unnecessary to prove the ordinance in the municipal court, as that court was bound to take judicial notice of its existence. No reference was made to this ordinance in the decision or in the findings by the lower court. Whether the ordinance has a legal existence we have no way of knowing. We are not authorized to take judicial notice of it as a matter of·law and, indeed, it is difficult to see how we could do so as a matter of fact. What effect, if any, such an ordinance would have upon the rights of the parties we cannot consider.

While in the present case it is plain that the municipal court gave no weight to this pretended ordinance, the question recurs as to a situation arising upon an appeal from a judgment of a municipal court depending for its validity upon an ordinance concerning which the municipal court may, but this court may not, take judicial notice. How is this court to know whether such ordinance has a legal existence? It is· suggested that under such circumstances. the municipal court should find as a fact the existence of such ordinance. Such a finding would be conclusive upon this court unless contrary to the great weight of the evidence, a situation that would not arise unless the legal existence· of the ordinance was challenged in the lower court. This suggestion is somewhat beside the case, but is made for the future guidance of municipal courts where their· judgments depend upon the existence of ordinances of which they but not this court may take judicial notice.

*By the Court.*—Judgment affirmed.·