STATE OF WEST VIRGINIA *v.* ARLIE A. BUNNER *et al.*

(No. 9514)

Submitted October 5, 1943. Decided November 23, 1943.

*Ira J. Partlow,* Acting Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *Harrison Conaway,* for plaintiff in error.

*Ward Lanham,* for defendants in error.

ROSE, JUDGE:

In the Criminal Court of Marion County an indictment was returned against Arlie A. Bunner, Gaynor Bunner and Randolph R. Bunner, partners doing business as "Bunner Brothers", a demurrer to which was sustained by that court. The circuit court of that county refused a writ of error on petition of the State, and, upon application of the State to this Court this writ of error was awarded to the order so made by the circuit court.

The indictment charges the defendants with having sold one pint of milk from their store in the City of Fairmont, Marion County, without having a permit from the health officer of that county, as required by certain regulations alleged to have been duly adopted and promulgated by the public health council of the State. The demurrer embodies fifteen grounds which, for our present purpose, may be adequately considered under three heads: First, that the statute of this State, under which these regulations were adopted violates both the Constitution of West Virginia

and that of the United States by attempting to vest in the State Health Council an unwarranted power to legislate by prescribing rules and regulations in the domain of public health; second, that the regulations in question are themselves unconstitutional in that they attempt to require from a milk dealer a permit to engage in that business; and that they give the county health officer the arbitrary right, to award or refuse such permit and prescribe no method by which the same may be obtained, and in that they do not state the day on which they take effect; and, third, that the indictment itself is further insufficient in law in that it fails to show affirmatively that the regulations, a provision of which is alleged to have been violated, were legally in effect at the time of their alleged violation.

The power of a legislative body to vest in an administrative body or officer the legal capacity to establish and enforce regulations and rules governing businesses, which will then have the legal effect of law, although at one time challenged, is now universally sustained, but only within certain well-recognized limits. We have held that, in creating administrative machinery for the regulation of a business, the legislature itself must set up standards and definite limitations under which the administrative body may act, and must leave to it only the power to regulate and prescribe details, which are to be measured by the "standards" so established by the legislative act. *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797; *Rinehart* v. *Woodford Flying Service,* 122 W. Va. 392, 9 S. E. 2d 521; *Chapman* v. *Huntington Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502; *Bates* v. *State Bridge Commission,* 109 W. Va. 186, 153 S. E. 305; *State ex rel. Public Service Commission* v. *Baltimore & Ohio R. R. Co.,* 76 W. Va. 399, 85 S. E. 714; *Blue* v. *Smith,* 69 W. Va. 761, 72 S. E. 1038. This general rule, however, is in some degree flexible, requiring less definite standards in cases where the establishment thereof is not practicable owing to the

character of the business involved. *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture, supra.* But, of more importance in the present case, is another uniformly recognized exception to the general rule, by which the legislature is much less restricted when its delegation of legislative authority is to an administrative body created for the care of public health. Ordinarily the power to delegate legislative authority must be found in the Constitution, but, where the subject matter of the administrative authority is public health, the power is uniformly held not to originate in the Constitution, but from "the police power". This vast, undefinable, reservoir of power inheres in the legislative body of every sovereign state wholly independent of the Constitution. "The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. Consequently, it is inherent in the states of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution." 11 Am. Jur. Constitutional Law, Sec. 245. Courts generally, therefore, take the position that regulations and rules duly promulgated by a legally constituted board of health will be construed as valid wherever possible, if reasonably calculated to achieve the result intended by the legislature. *La Porta* v. *Board of Health,* 71 N. J. L. 88, 58 A. 115; *Gregory* v. *City of New York,* 40 N. Y. 273; *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422, 134 N. E. 815; *Board of Trustees of Highland Park etc.* v. *McMurtry,* 169 Ky. 457, 184 S. W. 390; *Schulte* v. *Fitch,* 162 Minn. 184, 202 N. W. 719; *Crayton* v. *Larabee,* 220 N. Y. 493, 116 N. E. 355. Hence we are not rigidly controlled by the pronouncements of this Court in regard to regulations of administrative bodies which relate purely to business matters.

The general statute under which the public health council of this State acts is found in Chapter 16 of the

Code. Six members of this Council are required to be graduates of reputable medical colleges and to have at least five years experience in the practice of medicine, the other being a graduate of a reputable dental college. By this statute the Council is required, *inter alia,* "to promulgate rules and regulations", and is authorized "by the affirmative vote of a majority of its members, to establish and from time to time amend regulations under the public health laws, the enforcement of which devolves upon the state commissioner of health." Code, 16-1-3. The same section further provides that "Any violation of the regulations so promulgated, when said regulations are reasonable and not inconsistent with law, shall be a misdemeanor * * *." There is, thus, in the statute a "standard" which requires regulations by the health council to be reasonable and consistent with law, in order to be enforceable in a criminal proceeding. This is not a total absence of "standards". Further, by Section 5, Article 7 of this chapter a more direct and significant provision, for the purpose of this case, is found in these words: "The public health council shall adopt regulations to provide clean and safe milk and fresh milk products, and, when promulgated, these regulations shall be the minimum requirements to be enforced by local health authorities throughout the State." Here we have additional and very definite and practicable standards and limitations with respect to the rules and regulations, or "legislation", which the council is empowered to enact. This section does not purport to give the health council any authority over the business of vending milk as a business. It has no authority to fix prices, or to determine the richness of milk, or its fat, or other solid, content. The sole authority conferred relates to the cleanliness and safety of the milk — qualities which bear directly upon its effect on public health. And the standard required by the statute is that the milk shall be clean and safe. There can be no difficulty in understanding what these words mean, nor in applying them as a test for the marketability of milk. Milk,

from its origin and from the too common primitive method of its handling, is peculiarly exposed to filth and readily susceptible to dangerous contamination and, therefore, comes clearly within the scope of health regulations. It would, of course, be utterly impossible for the legislature to prescribe in detail the infinite variety of rules and practices necessary to be barred, or required, in order to guard against filthy or contaminated milk. All health statutes are of necessity general in terms. The legislature cannot possibly prescribe medicine, or surgical treatment, nor even full and complete sanitary requirements. Medicine in general and sanitary regulations in particular are a growing and ever-changing science to be administered to the public by experts, as physicians prescribe for a private patient. No "patent medicine" in the form of fixed legislative rules would be either intelligent or efficient; hence, the great liberality which courts have universally allowed to health boards or councils in this field. We are accordingly, clearly of opinion that the standard of cleanliness and safety established by the statute and the limitation, also contained therein, to the effect that the regulations adopted by the council shall be reasonable and not inconsistent with law, constitute a sufficient precaution by the legislature against undue, or unconstitutional "legislation" by this administrative body.

The indictment embodies in full the regulations of the council under a section of which this indictment was found. These consist of fifteen single-spaced typewritten pages. We are not here concerned with any of these regulations except that which the defendants are charged with having violated, namely, the requirement that, before selling milk, the dealer must have a permit from the health officer. Section 3 of these regulations reads as follows:

> "Permits.— It shall be unlawful for any person to bring into or receive into the State of West Virginia, or its police jurisdiction, for sale, or to sell, or offer for sale therein, or to have in storage

where milk or milk products are sold or served, any milk or milk product defined in this regulation, who does not possess a permit from the health officer.

"Only a person who complies with the requirements of this regulation shall be entitled to receive and retain such a permit.

"Such a permit may be suspended by the health officer, or revoked after an opportunity for a hearing by the health officer, upon the violation by the holder of any of the terms of this regulation."

It is argued, in the first place, that since the legislative act did not expressly confer upon the health council power to require a permit, this requirement is void. We are cited to no case in this or any other State where such a holding has been announced, and, on the other hand we have not been pointed to, or found, a case where the requirement of such a permit without express legislative authority has been approved. But the use of a permit, sometimes in the more formal character of a license, is a very common device, expressly authorized by legislation in all states, for the controlling or regulating of a vast number of businesses and occupations. It cannot, therefore, be considered an unusual, unreasonable or drastic regulation. It is, in fact, a very simple, very effective and very mild method of control. In the present instance no fee is charged for the permit. No difficulty or delay is involved. When issued, a permit can be nothing more than a formal certification by the health officer that the milk proposed to be sold by a named vendor has been produced under conditions prescribed by the health council. Certainly, under the statute the health officials would have been permitted to forbid the sale of any particular lot of milk which was found to be filthy or contaminated. The permit would merely signify to the public in advance that the conditions under which the permittee produces his milk is such as to recommend it as being clean and safe. We are, therefore, of opinion that this simple method of guarding against the sale of

improper milk is reasonable, and that the regulation in that respect is valid.

It is also said, however, that the regulation by express terms confers upon the health officer arbitrary power to grant, or refuse, the permit, in that it does not state upon what condition an applicant shall be entitled to a permit and does not in terms require the granting of a permit to all who are duly qualified. We do not so construe the regulation. The regulations expressly provide that "Only a person who complies with the requirements of this regulation shall be entitled to receive and retain such a permit." This clearly stipulates that one who shall not have complied with the requirements shall not receive such permit and equally states that one who has so complied shall be so entitled. It is true that the regulations do not prescribe any exact method of making application for the permit. This, we think, is wholly immaterial. It does provide that the permit shall be "from the health officer", thus designating the person to whom application shall be made.

Subsection R of Section 1 of the regulations provides that "The term 'health officer' shall mean the State Health Commissioner or his duly appointed representatives including all full and part time representatives of district, county and health departments." This would inject confusion in the regulations were it not that Code, 16-2-1, provides that "The county health officer together with the president of the county court and the prosecuting attorney shall constitute the county board of health, of which the county health officer shall be the executive officer. The county board of health shall exercise all the powers, and enforce all the rules and regulations of the state public health council, so far as applicable to such county." This statute clearly points out what person is meant by the term "health officer" in the regulations. It will be a very simple process, on contacting this officer, to ascertain what formalities or steps, are necessary to obtain the permit. The requirements to qualify for the permit are equally plain: The applicant must have complied with the regu-

lations. If it should be that any of these regulations are unreasonable, or invalid, he will not be required to comply therewith as a prerequisite to obtaining the permit. The method of procedure in such case is to apply to a proper court to compel the issuance of the permit, rather than to undertake to operate in defiance of the regulation. *Brackman's, Inc.,* v. *City of Huntington,* 126 W. Va. 21, 27 S. E. 2d 71; *State ex rel. Kelley* v. *City of Grafton,* 87 W. Va. 191, 104 S. E. 487; *State ex rel. Hoffman* v. *Town of Clendenin,* 92 W. Va. 618, 115 S. E. 583; *Bissett* v. *Town of Littleton,* 87 W. Va. 127, 104 S. E. 289. We conclude, therefore, that the regulations in this respect are not assailable.

Finally, the defendants say that the regulations are invalid because they fail to show on their face the time when they shall go into effect. The controlling statutory provision is found in Code, 16-1-3, and is as follows: "Every general regulation adopted by the public health council shall state the day on which it takes effect * * *." The only provision in the regulations purporting to show their effective date is in the last section but one, and reads thus: "* * * and this regulation shall be in full force and effect immediately upon its adoption and its publication, as provided by law." On behalf of the State it is argued that, although no day is in words and figures mentioned for the taking effect of the regulations, yet the allusion therein to the date of adoption is a sufficient reference to the minutes of the council, a public record, where the exact day may be found, and thus sufficiently complies with the statutory requirement in this regard. Possibly this would be true if the date of adoption alone fixed the time when the regulations should become effective; but the regulations do not so say. The provision is that the regulations shall be in effect, not simply upon their adoption but upon their adoption and publication as provided by law. The crucial date, therefore, is not that of the adoption but that of the completion of the publication of the regulations and there is no attempt therein to state when the publication shall be complete. Hence, there is a com-

plete failure to comply with this statutory requirement.

This provision of the statute is clearly mandatory and, also, highly salutary. It would be an extreme hardship for legitimate milk dealers to be instantly deprived of the right to sell their product, without having a time within which to adjust their methods to the requirements of these new and elaborate regulations, and without an exact notice of the precise time within which they must comply therewith. A legislative act may take effect from its passage, but the legislature wisely chose not to confer on the health council power to make its regulations effective until due publication, and without a clear statement in the regulations themselves of their effective date.

The indictment is further defective in that it does not allege that the regulations came into effect on or before the date of their alleged violation by the defendants. While the indictment does allege the adoption of the regulations on November 6, 1939, the only reference to their publication is the statement "that said regulations were duly published by distribution and circulation in the manner determined by said Council." When were they published? Was it before or after the alleged offense? The indictment wholly fails to inform us. True, the regulations were adopted November 6, 1939, and the alleged offense was committed in September, 1942. It is, therefore, highly probable that such publication as was made was completed long before the violation for which the defendants are indicted. But this probability cannot aid a pleading in criminal law. It was imperative that this indictment should show the regulations to have been brought effectively into force before their alleged violation. Courts do not take judicial notice of municipal ordinances. *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, 90 S. E. 347; *Yates* v. *Milwaukee*, 10 Wall. (U. S.) 497, 19 L. Ed. 984; *Ex parte Daniels*, 183 Cal. 636, 192 P. 442; *Shanfelter* v. *Mayor etc. of Baltimore*, 80 Md. 483, 31 A. 439; *Commonwealth* v. *Kimball*, 299 Mass. 353, 13 N. E. 2d 18; *Wergin* v. *Voss*, 179 Wis. 603, 192 N. W. 51. No more liberal rule is possible as to

regulations of a mere administrative body or official. *Shilkett* v. *State*, 29 Okla. 17, 232 P. 127; *State* v. *Rackowski*, 86 Conn. 677, 86 A. 606; *Haney* v. *State*, 52 Tex. Cr. Rep. 485, 107 S. W. 836; *Young* v. *City of Attalla*, 25 Ala. App. 255, 144 So. 128. For this defect alone the indictment is demurrable.

Other questions are suggested by an examination of the indictment. The statute provides that general regulations of the public health council "shall be published in such manner as the public health council may determine." Code, 16-1-3. The regulations as adopted in turn provide for their "publication as provided by law." This constitutes a legal circle. What method, therefore, of publication is required? Can it be determined in the present situation what constitutes a legal publication? Also the indictment alleges that the regulations were "duly published by distribution and circulation as determined by said Council." Can any mere circulation and distribution of these regulations be a compliance with the statutory requirement for their publication? These questions we recognize but consider their solution unnecessary for the determination of the present case.

Accordingly the judgments of the Criminal and Circuit Courts of Marion County are affirmed.

*Affirmed*

LOVINS, JUDGE, concurring:

I concur in the result but do not agree with all the reasons advanced in support thereof. The rule with reference to delegation of legislative power and the creation of standards of administration by statute has been relaxed in relation to public health.

The statute which authorized the public health council to adopt regulations with reference to milk and milk products provides insufficient standards for the exercise of the power delegated. There is no substantive provision of law to be administered and carried into effect. Code,

16-7-5. The object is to provide clean and safe milk and fresh milk products and the only procedure by which that object is to be attained is by regulations to be adopted by the council. The discretion thus vested is too wide and the language of the statute is too general to provide any standards for administrative action. The following is a clear statement of the rule:

"Although when circumscribed within definite valid limitations and restrictions powers conferred upon designated public officials to provide rules and regulations for the complete operation and enforcement of a law within its expressed general scope and purpose will be sustained because not unlawful; yet if it attempts to delegate the power to enact a law or modify it, or to exercise an unrestricted discretion in the application of the law, it will not be sustained, because these are non-delegable legislative functions." *Sutherland* v. *Miller,* 79 W. Va. 796, 803, 91 S. E. 993.

See also *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 55 S. Ct. 241; *A. L. A. Schechter Poultry Corp.* v. *United States,* 295 U. S. 495, 55 S. Ct. 837. The difficulty of providing standards for the adoption of regulations by the public health council is not apparent. When we examine and consider Code, 19-11-3, as amended, definitions and standards are therein provided for regulation and administration of the dairy industry.

A stricter rule is necessary when the power to define acts constituting crime is conferred on administrative boards and officers than when the power delegated deals with civil rights. The legislative standard set up for administrative action in defining and prohibiting acts as criminal should only permit a limited discretion. I do not believe the decisions of this Court in the cases of *Rinehart* v. *Flying Service,* 122 W. Va. 392, 9 S. E. 2d 521, and *Chapman* v. *Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, constitute a sufficient precedent in the instant case. In this case we are dealing with an indictment charging

292

a criminal act, made so by regulation, rather than enforcement or determination of civil rights.

Furthermore, I am convinced that the provisions for the granting or withholding of a permit should be incorporated in the statute rather than in the regulations of the public health council.

For the reasons herein stated I do not concur in that part of the opinion which relates to the first, second and third points of the syllabus.