JACK PERRY, *President,* UMWA

*v.*

WALTER MILLER, *Director*

DEPARTMENT OF MINES, *etc., et al.*

(No. 14990)

Decided December 16, 1980.

*Harry Harless* for petitioner.

*John N. Charnock, Jr., Chauncey H. Browning,* Attorney General, *Richard W. Clonch,* Assistant Attorney General, for respondents.

NEELY, CHIEF JUSTICE:

In this original mandamus proceeding the petitioners seek an interpretation of *W. Va. Code,* 22-1-30 [1977]. As is usual in mine safety cases, the crux of the issue is whether the words mean what they say or something else, in this case specifically whether "shall" means "shall" or whether it means "may." Also, as usual, we hold that words mean what they say and that "shall" means "shall;" therefore, we award the writ. *See* for similar mine safety questions, *Walls v. Miller,* 162 W.Va. 563, 251 S.E.2d 491 (1978); *Itmann Coal Co. v. Miller,* ___ W.Va. ___, 272 S.E.2d 668 (1980).

On 27 September 1978 a roof fall occurred at No. 5 entry face area, No. 1 Section, at Alma Mine No. 1 of the Peter White Coal Corporation in Isaban, Mingo County, West Virginia, resulting in the death of Robert Gibson, a roof bolt helper.

On 15 November 1978 Department of Mines inspectors alleged that two section foremen employed at Alma Mine, namely Jerry Cline and Kenneth Mullins, had knowingly violated the approved roof control plan of that mine, and the inspectors recommended that their foreman certificates be withdrawn or suspended. The inspectors did not witness any of the facts which they believed supported their allegations, but drew their conclusions from the investigation of the area where the accident occurred and from statements made to them by the miners who were on duty at the time.

On 12 June 1979 Walter Miller, Director of the Department of Mines, petitioned the Board for the withdrawal or

suspension of the mine foreman certificates of the two foremen. On 18 June 1979 the Chairman of the Board issued an order stating that the Board had determined that probable cause existed, if the allegations alleged in the petition of the Director were true, and set hearing dates on the petitions. Following a number of continuances, on 26 September 1979 the director issued a separate proposed Order of Assessment against the two men levying the maximum civil penalty of $250. The Department of Mines then informed the Chairman of the Board that the matter had been settled, and that the Department of Mines did not wish to pursue the matter further. The chairman orally informed the petitioner and the other member of the Board (there being a vacancy at the time) that the Department of Mines did not intend to present any evidence; that the Department did not intend to pursue the matter further; and, that a civil penalty had been assessed. The chairman concluded that under those circumstances the granting of a hearing would be a vain act. The petitioner now seeks a writ of mandamus against the respondents directing them to pursue decertification of the foremen in question before the Board.

The relevant portion of *W. Va. Code*, 22-1-30 [1977] upon which petitioner relies to support his demand for a hearing provides as follows:

> Upon request, the director shall investigate the charge and report the results of the investigation to the board of appeals within ten days of his receipt of the charge. If the board determines that probable cause exists to support the allegation that the person charged has violated his duty, the board by the end of the twenty-day period shall set a date for hearing which date shall be within eighty days of the filing of the charge. Notice of the hearing or notice of denial of the hearing for failure to state a charge and a copy of the charge shall be mailed by certified mail, return receipt requested, to the charging party, the charged party, the director, the representative of the miner or miners affected, and to any interested person of record. Thereafter the board shall maintain the file of the charge which

shall contain all documents, testimony and other matters filed which shall be open for public inspection.

Hearing. —The Board of Appeals shall hold a hearing, may appoint a hearing examiner to take evidence and report to the Board of Appeals within the time allotted, may direct or authorize taking of all depositions under oath by any participant, or adopt any other method for the gathering of sworn evidence which afford the charging party, the charged party, the director and any interested party of record due process of law and a fair opportunity to present and make a record of evidence.

\* \* \* \* \*

While from a practical perspective it may, indeed, be inferred that going to the hearing stage under the circumstances of this case could be a vain act, nonetheless, the statutory scheme envisages a hearing at which all interested parties have an opportunity to be present and to introduce evidence. Such a statutory scheme obviously contemplates that the miners who are subjected on a daily basis to the hazards of death and dismemberment will have an opportunity to vindicate their rights to a safe work place in an open, fair, and impartial hearing. Therefore, it appears to be the clear intention of the statute that once the Board has found probable cause a hearing must be held, regardless of how brief or how sparsely attended. In this regard the statute, in a number of places, uses the word "shall" and we hold that "shall" means "shall." *Currey v. Human Rights Comm'n*, ___ W.Va. ___, 273 S.E.2d 77 (1980).

Precedent on an issue of this sort is both sparse and of little value; however, it is possible to analogize this situation to a normal criminal prosecution where a prosecuting attorney has absolute discretion with regard to seeking an indictment from a grand jury in the first instance. Once, however, the grand jury has returned an indictment, that indictment cannot be dismissed without the approval of the circuit court. *W.Va. Code*, 62-2-25 [1923]. While the circuit court can give permission to dismiss the

indictment, thus avoiding a meaningless hearing, nonetheless the requirement of court permission indicates that at some point prosecutorial discretion ends.

Accordingly it is ordered that the writ of mandamus for which the petitioner prays be awarded and that the Board of Appeals hold a hearing within thirty days from the receipt of this Court's order.

*Writ awarded.*