300 S.E.2d 622

**STATE ex rel. Jack PERRY**

v.

**Walter N. MILLER, Dir., W.Va. Dept. of Mines, et al.**

**No. 15655.**

Supreme Court of Appeals of West Virginia.

Jan. 28, 1983.

---

Daniel F. Hedges, Charleston, for relator.

Keith Huffman, Asst. Atty. Gen., James F. Wallington, Sp. Asst. Atty. Gen., W.Va. Dept. of Mines, Charleston, for respondents.

David L. Stuart, Preiser & Wilson, Charleston, Seldon S. McNeer, Jr., Campbell, Woods, Bagley, Emerson, McNeed & Herndon, Huntington, Steven C. Hanley, John R. Hoblitzell, Kay, Casto & Chaney, Arthur T. Ciccarello, Lewis, Ciccarello, Masinter & Friedbert, Charleston, for intervenors.

MILLER, Justice:

In this original mandamus proceeding, the relator Jack Perry, as a member of the Board of Appeals for the West Virginia Department of Mines, seeks to compel the Director of the Department of Mines to temporarily suspend five certified mining employees pending the outcome of a formal hearing pursuant to the procedures set out in W.Va.Code, 22-1-30.

The underlying facts arise out of a mine disaster in which five miners employed by Westmoreland Coal Company died in an explosion at the Ferrell No. 17 Mine in Boone County, West Virginia, on November 7, 1980. After investigations and reports made by the West Virginia Department of Mines and the United States Department of Labor, the Director of the Department of Mines filed charges against five mine and assistant foremen. The five were charged with neglect and/or failure to perform various statutory duties mandated by the West Virginia Coal Mine Safety Laws. Probable cause was subsequently found by the Board of Appeals, and various motions were made and heard. On October 27, 1981, the Circuit Court of Kanawha County granted an injunction to prohibit all further proceedings, upon the challenge by the foremen that certain members of the Board of Appeals should be disqualified.

The Respondent Director does not resist this mandamus but points to the fact that there is no express authority in W.Va.Code, 22-1-1, et seq., which authorizes him to temporarily suspend certificates. The five foremen who were granted leave to intervene argue that their mine certificates con-stitute valuable property rights such that procedural due process requirements require a hearing before the certificates can be suspended. They cite several of our own procedural due process cases [1] as well as those from the United States Supreme Court.[2]

It is important to note at the outset that the provisions of W.Va.Code, 22-1-1, et seq., relate to coal mine health and safety which regulation is well within the broad police power of the Legislature.[3] In light of this fact, we have accorded a liberal interpretation of these laws in favor of those to whose benefit they are drawn. *Perry v. Miller,* 166 W.Va. 138, 272 S.E.2d 678 (1980); *Itmann Coal Co. v. Miller,* 166 W.Va. 84, 272 S.E.2d 668 (1980); *Walls v. Miller,* 162 W.Va. 563, 251 S.E.2d 491 (1978). In Syllabus Point 4 of *United Mine Workers of America v. Miller,* 170 W.Va. 177, 291 S.E.2d 673 (1982), we stated:

"The Legislature has established a clear and unequivocal public policy that the Department of Mines shall have as its primary purpose 'the protection of the safety and health of persons employed within or at the mines of this state.' W.Va.Code § 22-1-2 (1981 Replacement Vol.)."

In *Anderson & Anderson Contractors v. Latimer,* 162 W.Va. 803, 257 S.E.2d 878 (1979), we upheld the constitutionality of certain provisions of the Surface Mining and Reclamation Act against the claim that the standards for authorizing an immediate cessation of operations were unconstitutionally vague and violated procedural due process concepts in not having a precessa-

1. *Clarke v. Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981); *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978); *North v. West Virginia Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977); *State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 136 S.E.2d 783 (1964).

2. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

3. The health and safety aspects are amply reflected in various policy declarations found throughout Chapter 22. *E.g.,* W.Va.Code, 22-1-2 ("The department of mines ... shall give prime consideration to the protection of the safety and health of persons employed within or at the mines of this State."); W.Va.Code, 22-2A-1(a)(1) ("The legislature concurs with the congressional declaration made in the 'Federal Coal Mine Health and Safety Act of 1969' that 'the first priority and concern of all in the coal mining industry must be the health and safety of its most precious resource—the miner.'"); W.Va.Code, 22-6A-2(b) ("The highest priority and concern of this legislature and all in the coal mining industry must be the health and safety of the industry's most valuable resource—the miner.").

tion hearing. Using due process concepts previously enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975), and *North v. West Virginia Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977), we concluded: "Based on *Mathews* and *North*, cessation orders temporarily halting appellants' surface mining operations without hearings are constitutionally permissible." 162 W.Va. at —, 257 S.E.2d at 883.

Much the same reasoning was used by the United States Supreme Court in *Hodel v. Virginia Surface Mining and Reclamation Association*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), where in a unanimous opinion the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201, *et seq.*, was upheld against a number of constitutional attacks. One of the claims was that the section permitting immediate cessation orders without a prior hearing violated procedural due process concepts. In rejecting this argument, the Supreme Court stated:

> "Our cases have indicated that due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest. *See Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908 [1915], 68 L.Ed.2d 420 (1981); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780 [786], 28 L.Ed.2d 113 (1971). The Court has often acknowledged, however, that summary administrative action may be justified in emergency situations.... [Citations omitted, *see* note 4.[4]]
>
> "... Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action. *Ewing v. Mytinger & Casselberry,*

*Inc., supra*, at 599, 70 S.Ct. 870, 94 L.Ed. 1088. *See Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612 [2620–21], 61 L.Ed.2d 321 (1979); *id.*, at 21, n. 1, 25, 99 S.Ct. at 2622, n. 1, [2624–25], 61 L.Ed.2d 321 (Stewart, J., dissenting); *North American Cold Storage Co. v. Chicago, supra*, 211 U.S. at 315–316, 29 S.Ct. at 104, 53 L.Ed. 195. Moreover, the administrative action provided through immediate cessation orders responds to situations in which swift action is necessary to protect the public health and safety." 452 U.S. at 299–301, 101 S.Ct. at 2372–73, 69 L.Ed.2d at 31.

In *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the United States Supreme Court similarly upheld a Massachusetts statute which authorized suspending a driver's license for three months if the driver refused a demand to take a breath-analysis test. The principal claim made was that the statute did not provide for a prehearing suspension but the Court relying on its earlier cases, including *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), rejected this argument, stating:

> "Here, as in *Love*, the statute involved was enacted in aid of the Commonwealth's police function for the purpose of protecting the safety of its people. As we observed in *Love*, the paramount interest the Commonwealth has in preserving the safety of its public highways, standing alone, fully distinguishes this case from *Bell v. Burson*, 402 U.S. [535], at 539, 29 L.Ed.2d 90, 91 S.Ct. 1586 ... We have traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety." 443 U.S. at 17, 99 S.Ct. at 2620, 61 L.Ed.2d at 334.

---

4. The Supreme Court in *Hodel, supra,* cited these cases for the proposition that summary administrative action may be justified in emergency situations: *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Boddie v. Connecticut, supra; Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, 28 Ohio Ops. 220 (1944); *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, 28 Ohio Ops. 180 (1944); *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908).

We touched on the due process exception for a prehearing which is grounded on overriding public health and safety concerns or emergency conditions in *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977), where we stated in Syllabus Point 2 that "due process [procedures] must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise." This same principle was elaborated upon in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), where we discussed due process concepts in civil service suspensions and in part of Syllabus Point 7 concluded:

"[U]nless the suspension arises in a situation where there is a continuing danger to persons or property or to the orderly conduct of the affairs of the agency, in which case an immediate suspension may be warranted; and in such case, the necessary notice and rudimentary hearing should follow as soon as practicable."

█ Although it is true that there is no express statutory authority given to the Director to temporarily suspend the certificate or license of a mine foreman, it is clear from the relevant statutes that the Director has the ultimate authority to license.[5] Furthermore, we have recognized that where the Legislature has delegated to a board or agency part of its police power in the protection of public health and safety, precise legislative guidelines are not required. In *State v. West Virginia Racing Commission*, 133 W.Va. 179, 55 S.E.2d 263 (1949), we considered the situation where the Legislature had delegated broad authority to the West Virginia Racing Commission to regulate horse racing. It in turn had promulgated a number of detailed regulations including those dealing with the administering of drugs to horses, the taking of saliva tests and the suspending of racing licenses for violating the regulations. An original mandamus was filed to reinstate a suspended license on the theory that there was not specific statutory authority to suspend the license and that there had not been a sufficient standard contained in the statute to support the detailed regulations. In rejecting this argument, we said:

"The Legislature being the depository of this power, may delegate it to boards and commissions and, as a general rule, should set up standards for the guidance of such boards and commissions in the use and application of the power granted. However, there are exceptions to this requirement. The exception to the rule is well stated in 42 Am.Jur. 345, wherein it is stated:

" ' * * * The rule requiring an express standard to guide discretion is recognized as properly applied to statutes or ordinances regulating ordinary lawful activity, but to be subject to the exception that where it is impracticable

---

5. W.Va.Code, 22–2–7 (1977), requires certification of mine foremen, assistant mine foremen and fire bosses. Under a similar statute, this Court held in *Algoma Coal & Coke Co. v. Alexander*, 136 W.Va. 521, 529, 66 S.E.2d 201, 205 (1950):

"Mine foremen, assistant mine foremen and fire bosses are statutory officers and in the performance of their statutory duties are representatives of the State, not of the mine owner, the men who work in the mines, or of any union. *McMillan v. Middle States Coal & Coke Co.*, 61 W.Va. 531, 57 S.E. 129, 11 L.R.A. (N.S.) 840; *Gartin v. Draper Coal & Coke Co.*, 72 W.Va. 405, 78 S.E. 673; *Strother v. Coal & Coke Co.*, 81 W.Va. 657, 95 S.E. 806; *Holly v. McDowell Coal & Coke Co.*, (4 C.C.A.) 203 Fed. 668. The duties imposed upon a mine foreman or fire boss by the statutes are nonassignable. *Money Service Co. v. Stuart*, 112 W.Va. 370, 164 S.E. 409, 42 Am.Jur., Public Officers, Section 70."

W.Va.Code, 22–1–23, requires the Director to appoint a mine foreman examiner "to examine and certify mine foremen-fire bosses, assistant mine foremen-fire bosses and mine examiners or fire bosses." Under W.Va.Code, 22–1–26, the "mine foreman examiner shall, with the approval of the director, prepare, and from time to time, modify examinations" for applicants who desire certification. Pursuant to W.Va.Code, 22–1–28, the mine foreman examiner certifies successful applicants to the Director who prepares the certificates of qualification. Under W.Va.Code, 22–6A–6, the Director is directed to prepare and implement a training program: "Such program shall include, but not be limited to implementation of a program of instruction in each of the miner occupational specialties and the conduct of examinations to test each applicant's knowledge and understanding of the training and instruction which he is required to have prior to the receipt of a certificate."

to lay down a definite comprehensive rule, such as where the regulation turns upon the question of personal fitness or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressed. \* \* \*'.

"This statement is supported by the ruling of this Court in *West Central Producers Co-Operative Association v. Commissioner of Agriculture,* 124 W.Va. 81, 20 S.E.2d 797, and *State v. Bunner,* 126 W.Va. 280, 27 S.E.2d 823." 133 W.Va. at 192–93, 55 S.E.2d at 270.

Much the same point was made in *Quesenberry v. Estep,* 142 W.Va. 426, 95 S.E.2d 832 (1956), where we considered the validity of certain rules promulgated by the Board of Embalmers and Funeral Directors.[6]

In *State v. West Virginia Racing Commission,* 133 W.Va. at 194, 55 S.E.2d at 271, we also made the point that "the power vested in a board to issue a license for the exercise of a privilege implies the power to revoke such license for good cause," citing 53 C.J.S. *Licenses* § 44, at 649 (1948). *See also State Board of Cosmetology v. Maddux,* 162 Colo. 550, 428 P.2d 936 (1967); *Arrow Express Forwarding Co. v. Iowa State Commerce Comm.,* 256 Iowa 1088, 130 N.W.2d 451 (1964); *Bartlett v. State Real Estate Comm.,* 188 Neb. 828, 199 N.W.2d 709 (1972). From this rule flows the obvious corollary that gives the implied right of a temporary suspension where the public interest so requires as is stated in *Trap Rock Industries, Inc. v. Kohl,* 59 N.J. 471, 489, 284 A.2d 161, 170 (1971), *cert. denied,* 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796:

"We have consistently recognized an implied power in the State and its subdi-

visions to suspend its employees or officers pending disposition of indictments or other charges where the public interest so requires. . . .

"Indeed, even with respect to licenses to engage in a business or activity, it is generally said to be implicit that a suspension may be ordered pending investigation when the public interest so requires. *Davis, Administrative Law Treatise* (1958), § 7.08, *pp.* 438–444, 1970 *Supp.* § 7.08, *pp.* 331–333; *Gellhorn & Byse, Administrative Law* (4th ed. 1960), *pp.* 764–767; see *Bechler v. Parsekian,* 36 N.J. 242, 176 A.2d 470 (1961)." (Citations omitted)

While *Trap Rock Industries, Inc. v. Kohl, supra,* dealt with the suspension of a corporation's certificate to bid, similar law was applied in *In re Toth,* 175 N.J.Super. 254, 418 A.2d 272 (1980), which involved the temporary suspension of a state police officer pending the investigation of charges against him. In each of these New Jersey cases, as well as *Willis v. Dyer,* 163 N.J. Super. 152, 394 A.2d 383 (1978), the administrative procedure act had a formal hearing procedure for the ultimate revocation or suspension but this did not preclude the court from finding an implied right of temporary suspension because of public necessity. Also, in *O'Hara v. Commissioner of Public Safety,* 367 Mass. 376, 326 N.E.2d 308 (1975), the Supreme Court of Massachusetts concluded that a temporary suspension of a police officer was not violative of procedural due process.

▮ We need not adopt the broad language of *Trap Rock Industries, Inc. v. Kohl, supra,* for the purposes of this case. It is sufficient to hold that where an administrative agency is given the power to license in an area that has a direct impact on the health or safety of the members of the public including employees of a given industry, such agency possesses the power to

---

**6.** In Syllabus Point 4 of *Quesenberry v. Estep, supra,* we said:

"The general rule, which requires an express standard to guide the exercise of discretion and applies to legislation regulating ordinary lawful activity, is subject to the exception that when it is impracticable to formulate a definite comprehensive rule or when the legislation relates to the administration of a police regulation and is necessary to protect the public health, morals, safety, and general welfare of the community, it is not essential that a specific prescribed standard be expressly stated in the legislation."

temporarily suspend such license without the necessity of holding a presuspension hearing when such suspension is necessary for health or safety reasons.

■ While W.Va.Code, 22–1–30, provides for a formal hearing procedure for revoking or suspending the certificate of a mine foreman, assistant mine foreman, fire boss, or any other certified person, we do not believe that based on the foregoing law that this section precludes the Director from issuing a temporary suspension pending the formal hearing procedure. It would be a gross anomoly if the Director, when confronted with serious health and safety violations on the part of an individual whom he is required to certify as being competent, could not temporarily suspend such individual's license. To adopt any alternative would be not only risking the lives and safety of the employees who are protected by the statute but would expose the employer's plant and equipment to the possibility of serious damage or neglect. This would run counter to the clear and unequivocal legislative policy which we have outlined in note 3.

■ We observe that the power of the Director to temporarily suspend is not without some procedural limitation when considered in the context of W.Va.Code, 22–1–30. The Board of Appeals is required to make a probable cause finding within twenty days. Nothing within the framework of this statute would preclude the Board from modifying the Director's suspension order after the filing of the charge and before and during the hearing.[7]

Finally, the intervenors question the appropriateness of a mandamus as a means of raising this issue. We have dealt with this issue in some detail in *Smith v. W.Va. State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680, 684 (1982), where we concluded:

"There is a premise, perhaps not specifically articulated, in our mandamus cases that where the legal issue is of a substantial public policy nature, we will accept an original writ of mandamus rather than force the petitioner to try the issue through administrative proceedings or in a lower court. *E.g., Walls v. Miller, supra; State ex rel. Board of Education of the County of Kanawha v. Dyer,* [154 W.Va. 840, 179 S.E.2d 577 (1971)]; *Stowers v. Blackburn,* [141 W.Va. 328, 90 S.E.2d 277 (1955)]; *Carter v. City of Bluefield,* [132 W.Va. 881, 54 S.E.2d 747 (1949)]." (Footnote omitted)

In *Smith v. W.Va. State Board of Education, supra,* the relator was seeking to have the respondent promulgate a regulation relating to corporal punishment of public school children. We concluded that the respondent did have statutory authority and directed the promulgation of an appropriate regulation. *See also United Mine Workers of America v. Miller, supra; Richmond Funeral Directors' Association v. Groth,* 202 Va. 792, 120 S.E.2d 467 (1961).

■ We believe that directing the promulgation of an appropriate regulation is the proper relief in this case. We decline to order suspension as we believe this is a discretionary decision resting with the Director and is determined based on his investigation and expertise. We have generally held that a mandamus does not lie to control tribunals or officers in the exercise of their discretionary powers in the absence of a showing of fraud, arbitrary or capricious conduct or misapprehension of the law, as we stated in part of Syllabus Point 5 of *State ex rel. Withers v. Board of Education of Mason County,* 153 W.Va. 867, 172 S.E.2d 796 (1970):

7. This result is suggested by *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), where the United States Supreme Court while sanctioning a temporary suspension of a horse trainer's license found that the post-suspension procedures under the New York statute violated due process. One of the concerns was the lack of any stay of the initial suspension during the pendency of the post-suspension hearing. *See*

*Barry v. Barchi, supra* at 67, 99 S.Ct. at 2650, n. 12, 61 L.Ed.2d at 377. However, the main procedural defect was that there was no time period when the post-suspension hearing had to be commenced. Under W.Va.Code, 22–1–30, the hearing has to commence within eighty days after the filing of the charge, which is within sixty days of when the Board of Appeals finds probable cause.

"Mandamus does not lie to control a [public] board ... in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board."

*See also State ex rel. Hawkins v. Tyler County Board of Education,* 166 W.Va. 363, 275 S.E.2d 908 (1980); *State ex rel. Payne v. Board of Education of Jefferson County,* 135 W.Va. 349, 63 S.E.2d 579 (1951).

We, therefore, conclude that a moulded writ of mandamus should be issued directing the Director of the Department of Mines to promulgate a temporary suspension regulation not inconsistent with the standards set out herein.

Writ As Moulded Issued.