354 S.E.2d 820

## CONSOLIDATION COAL CO.

v.

**Barton B. LAY, Jr., Director of the Department of Mines of the State of West Virginia and Local Union 1638, UMWA**

No. 17243.

Supreme Court of Appeals of
West Virginia.

March 11, 1987.

Robert M. Steptoe, Jr., Steptoe & Johnson, Clarksburg, for appellee.

J. Martin Mazezka, Thomas M. Myers, UMWA Dist. 6, Shadyside, Ohio, for appellant.

Keith Huffman, Steve Barcley, Asst. Attys. Gen., Charleston, for Director of Dept. of Mines.

BROTHERTON, Justice:

The UMWA, intervenor in a suit brought by Consolidation Coal Company, appeals a judgment of the Circuit Court of Harrison County which construed W.Va.Code § 22A–2–37(t)(2). The issue is whether that Code section requires the presence of a dispatcher at an inactive mine where there are nevertheless simultaneous movements of track equipment underground. The circuit court reversed an order of the Director of the Department of Mines (now Department of Energy), and held that the statute does not require a dispatcher in this situation. We agree with the interpretation given to the statute by the Department of Energy, and therefore reverse the decision of the circuit court.

West Virginia Code § 22A–2–37(t)(2) (Supp.1986) provides:

> In any coal mine where more than three hundred fifty tons of coal are produced on any shift in each twenty-four hour period, a dispatcher shall be on duty when there are movements of track equipment underground, including time when there is no production of coal. Such traffic shall move only at the direction of the dispatcher.

The mine in question is Consolidation Coal Company's McElroy Mine, an underground coal mine which has been inactive and producing no coal since October 3, 1984. Only four classified employees (bargaining unit employees represented by the UMWA) have worked at the mine since that time. They perform mine maintenance under the direction of supervisory personnel. The maximum number of employees underground on the day shift is six supervisory and four classified employees; the maximum number of employees underground on the afternoon and midnight shifts is three supervisors. The parties stipulated that there currently were no multiple simultaneous movements of track equipment in the mine, but that there might be multiple simultaneous movements of track-mounted personnel carriers.

The position of the UMWA, which is supported by the Department of Energy, is that § 22A–2–37(t)(2)'s 350–ton require-

ment is a threshold test for when the dispatcher requirement becomes applicable at an underground coal mine, *i.e.*, once the mine achieves that level of production on a consistent basis, it must have a dispatcher on duty when there are multiple simultaneous movements of more than one piece of underground track equipment, regardless of whether or not coal is being produced. The coal company asserts that the statute applies only to active mines, pointing to the fact that the statute clearly requires no dispatcher at a mine that consistently produces less than 350 tons per shift.

The appellant relies on two decisions written by Judge MacQueen of the Circuit Court of Kanawha County, which discuss the rationale for the dispatcher requirement. The more recent of the two, *UMWA v. Miller*, No. AP–CA–80–79 (Kanawha County June 28, 1983), concerned a mine operated by Valley Camp Coal Company. In that case, there were two production shifts and one maintenance shift during each twenty-four hour period, Monday through Friday. More than 350 tons of coal were produced in each working production shift. On Saturdays, however, the company operated two maintenance shifts and there was no production. Judge MacQueen noted that the primary function of a dispatcher is to coordinate a rescue effort. Hence he reasoned that the dispatcher requirement, like many of the protective provisions in our laws regulating the mining industry, requires a practice to be in effect on a full-time basis, even though it may be used only occasionally:

> Valley Camp candidly acknowledges that the primary and most important function of a dispatcher is to coordinate a rescue effort, including the movement of track vehicles in the event of an underground accident. Thus, based upon this salient function, it would appear appropriate that the dispatcher be available whether the underground track movement relates to coal production or mine maintenance, since there is no assertion that underground accidents are nonexistent or occur with less frequency when only maintenance work is being conducted. On the other hand, Valley

Camp points to the fact that the dispatcher on the day in question was only required to perform dispatcher functions for approximately two minutes during a full shift. It is this basic undercurrent assertion that the dispatcher is unnecessary during non-production underground activities which belies the logic of the company's position. This can be seen from a general evaluation of the provisions of Chapter 22, Article 2 which establish broad safety criteria for the operation of coal mines. Many of the protective provisions in this article require devices or practices to be in effect on a full time basis, whether there are certain kinds of activities in progress or not. Logically, the dispatcher, like any other safety practice, device or employee should be available whenever there is a possibility that the health and well-being of mine employees are jeopardized, even in the slightest degree.

Slip op. at 5–6. The court therefore required Valley Camp to provide a dispatcher during the two maintenance shifts each Saturday. *See also Big Bear Mining Co., Inc. v. Miller*, No. MISC. 80–167 (Kanawha County Nov. 5, 1980).

The legislature, in § 22A–2–37(t)(2), identified a category of mines to be subject to the dispatcher requirement, based on the amount of coal produced. Implicit in the 350-ton requirement is that mines in which a dispatcher is required are of a certain size and complexity. In mines of this size, it is not unreasonable to believe that even non-production and maintenance activity will require simultaneous movements of multiple pieces of track equipment. The Department of Energy asserts that the ten employees on the day shift at the McElroy Mine may be driving as many as ten vehicles underground, producing a high potential for accidents and justifying the presence of a dispatcher. The Department also cites the high potential for a mine disaster such as a roof fall in an idled mine, where both safety precautions and mine maintenance are less thorough than in an active mine.

Our lawmakers have made clear that "[t]he highest priority and concern of this legislature and all in the coal mining indus-

try must be the health and safety of the industry's most valuable resource—the miner." W.Va.Code §§ 22–9–2(b); 22–6–1(a)(1) (1985). This Court continually has sought to interpret the law in light of that policy of making West Virginia's mines as safe as is humanly possible. *See, e.g., State ex rel. Perry v. Miller*, 171 W.Va. 509, 300 S.E.2d 622, 624 (1983). Based on this policy, and on the statute and the interpretation given to it by the agency charged with its administration, we hold that § 22A–2–37(t)(2) (Supp.1986) requires a dispatcher at an inactive mine which at one time consistently produced more than 350 tons of coal per shift, on any shift in which there are multiple simultaneous movements of track equipment underground.[1]

We therefore reverse the decision of the Circuit Court of Harrison County, and reinstate the order of the Director of the Department of Mines to the extent that it is consistent with this opinion.

Reversed.

---

**1.** We note that the concern over under-utilization of the dispatcher voiced in the Valley Camp case was alleviated to some extent by an amendment to § 22A–2–37(t)(3) in 1986. Whereas the statute previously required the dispatcher to refrain from performing any unrelated tasks, *see* W.Va.Code § 22A–2–37(t)(3) (1985); *UMWA v. Miller, supra,* slip op. at 7, the current statute allows the dispatcher to function as the communications person required by § 22A–2–42 (Supp. 1986), and to perform other duties that do not interfere with his dispatching responsibilities. W.Va.Code § 22A–2–37(t)(3) (Supp.1986).