703 S.E.2d 280 (2010)
STATE of West Virginia ex rel. Ronald L. WOOTEN, Director, and the West Virginia Office of Miners' Health, Safety and Training, Petitioners Below, Appellants,
v.
The COAL MINE SAFETY BOARD OF APPEALS and William Coulson, Respondents Below, Appellees. and
West Virginia Office of Miners' Health, Safety and Training, Petitioner Below, Appellant
v.
William A. Coulson, Defendant Below, Appellee.
Nos. 35493, 35648.
Supreme Court of Appeals of West Virginia.
Submitted September 21, 2010.
Decided November 1, 2010.
*283 Elaine L. Skorich, Esq., Barry L. Koerber, Esq., Attorney General's Office, Charleston, WV, Attorneys for Appellants, Ronald Wooten, Director, and the West Virginia Office of Miners' Health, Safety and Training.
Harden C. Scragg, Jr., Esq., Ronald R. Brown, Esq., Attorney General's Office, Charleston, WV, Attorneys for Appellee, the Coal Mine Safety Board Appeals.
William A. Coulson, pro se, Moundsville, WV.
WORKMAN, Justice:
This case is before the Court upon the consolidated appeals of the West Virginia Office of Miners' Health, Safety and Training ("OMHST") from two separate Orders entered in two separate actions by the Circuit Court of Kanawha County. The first Order entered on July 24, 2009, dismissed the OMHST's petition for writ of prohibition in which the OMHST sought to prohibit the Coal Mine Safety Board of Appeals ("Board") from requiring it to submit a "proper application" to the Board before temporarily decertifying a coal miner pending final resolution on the coal miner's certification. The second Order entered on January 29, 2010, affirmed the decision of the Board, which found that the Appellee, William A. Coulson, a coal miner, should be decertified for a ninety-day period for his involvement in an accident that resulted in the death of a fellow coal miner, rather than the permanent decertification sought by the OMHST. Based upon a review of the parties' briefs,[1] arguments, the records and all other matters submitted before the Court, the Court reverses both decisions of the circuit court and remands the cases for entry of orders consistent with this opinion.

I. Factual and Procedural History
On October 19, 2008, a fatal underground mine accident occurred inside the McElroy Coal Company's McElroy Mine in Marshall County, West Virginia. Inspectors from the OMHST conducted an investigation and found that Mr. Coulson was operating the No. 47 locomotive when he collided with a trip of dollies. This collision caused Victor Goudy to be caught between the locomotive and another rail car. Mr. Goudy died from his injuries caused by this accident.
Allen Lander, an inspector for the OMHST, testified that just prior to the accident, Mr. Goudy and another miner, Gerald Louden, were operating one locomotive bringing flat cars with dollies to the mine bottom to be taken up the slope so that they could be loaded onto a conveyor belt. These two men were being followed by Mr. Coulson, who was operating a second locomotive about five minutes behind Mr. Goudy and Mr. Louden. Mr. Louden testified that he stopped the locomotive he was operating and Mr. Goudy got down to take the pins out so that the dollies could be transferred to go down the slope. Mr. Louden testified that they saw lights coming around a turn, which was the locomotive being operated by Mr. Coulson. Mr. Goudy then engaged in a procedure commonly used in this mine known as "flagging." Flagging is used to signal a locomotive to stop. Mr. Goudy flagged the locomotive operated by Mr. Coulson by using his cap light to signal for Mr. Coulson to stop the locomotive that Mr. Coulson was operating. Once equipment operators see the flagging, they turn off the lights on the equipment they are operating to acknowledge to the flagger, in this case, Mr. Goudy, that they know that they have been flagged. Mr. Coulson turned off the locomotive lights; however, he never slowed the motor down.
Additionally, there was testimony that Mr. Coulson knew that there was another crew in front of him, which included Mr. Goudy. Allen Lander, an inspector for the OMHST, testified that when a miner operating a locomotive in a mine knows that there is another crew ahead of him, but does not know exactly where that crew is located, it was standard procedure for the miner to call the crew ahead of him to find out their location. Mr. Coulson made no such call
*284 Shortly after the accident, Mr. Coulson's employer required him to submit to a drug test, even though Gerald Louden, a co-worker of Mr. Coulson's, testified that Mr. Coulson did not appear to be impaired at the time of the accident. Significantly, Mr. Coulson's shift began at 8:00 a.m. The accident occurred at approximately 12:00 p.m., and the drug test was administered at approximately 3:45 p.m. The results of the drug test revealed the presence of both oxycodone and hydrocodone in Mr. Coulson's system.[2] Mr. Coulson had a prescription for hydrocodone, but not for oxycodone.[3]
In early December 2008, after learning of Mr. Coulson's drug test results, the OMHST filed a petition with the Board seeking to permanently revoke all miner certificates held by Mr. Coulson. See W. Va.Code § 22A-1-31 (2010).[4] Specifically, the first charge against Mr. Coulson reflected the statutory and regulatory provisions that the OMHST inspectors found were violated when the inspectors investigated the mining accident. See W. Va.Code § 22A-2-43(g) (2010),[5] (relating to machine runners using care when operating mining machines); W. Va.C.S.R. § 36-34-3.2 (1985),[6] (relating to operating mining equipment safely, taking into consideration the condition of the haulage road, limit of visibility, height of coal seam, and the size of equipment); and W. Va.C.S.R. § 36-18-4.1 (2009),[7] (relating to equipment operators exercising reasonable care in operating equipment entrusted to them.). The second charge against Mr. Coulson was that he violated the provisions of West Virginia Code § 22A-2-57(c)(2010), as well as the provisions of West Virginia Code of State Rules § 36-22-4.3 (1984). Both the statute and the rule provide that "[n]o person shall at any time carry into any mine any intoxicants or enter any mine while under the influence of intoxicants." Id.; W. Va.Code § 22A-2-57(c).
On December 30, 2008, the Board issued an order finding that probable cause existed for the withdrawal of Mr. Coulson's mining certification. Specifically, the order provided: "The Board having considered the same hereby finds probable cause to exist for withdrawal of said certification of William A. Coulson of [sic] upon proper application to the Board." On January 6, 2009, the Board issued an order scheduling the matter for hearing on March 17, 2009.
On January 20, 2009, the OMHST notified Mr. Coulson that his underground coal miner certification was being temporarily suspended pursuant to the provisions of the West Virginia Code of State Rules §§ 37-2-1 to -2 (1983).
On January 26, 2009, Mr. Coulson sent a letter to the Board appealing the OMHST's decision to temporarily suspend his underground coal miner certificate pending a final hearing by the Board. Neither the OMHST, nor its counsel, was served with a copy of Mr. Coulson's appeal letter. On February 19, 2009, the Board, without notice to the OMHST, acted upon Mr. Coulson's letter and *285 issued an order directing that Mr. Coulson's underground coal miner certificate be reinstated pending the final hearing by the Board. The basis for the reinstatement was set forth in the Board's order as follows:
The Board, finding that the Petitioner failed to make the proper application to the Board prior to imposing the suspension complained of, does hereby grant said Motion and unanimously Order that the charged party [sic] certification be reinstated pending the final hearing in the matter.
On February 27, 2009, counsel for OMHST sent a letter to the Board stating that the procedures governing the temporary suspension of a miner's certificate pending a final hearing did not contain any language requiring the OMHST to submit a proper application to the Board before decertifying a miner. See W. Va.C.S.R. §§ 37-2-1 to -2. The OMHST requested that the Board provide it with the legal authority for this requirement. The Board did not respond to the OMHST's request.
Consequently, on March 2, 2009, the OMHST filed the underlying "Petition for Writ of Prohibition, Motion for Preliminary Injunction and Request for an Expedited Hearing." On March 9, 2009, the circuit court, after hearing arguments on the preliminary injunction sought by the OMHST, granted an injunction. The Court did not rule on the OMHST's request for a Writ of Prohibition.
Meanwhile, in the action regarding the charges brought by the OMHST against Mr. Coulson, on March 17, 2009, the Board held an evidentiary hearing on whether Mr. Coulson should be decertified. As a result of the hearing, the Board issued the following oral order:
The Board has deliberated and considered the two charges contained in the petition. The Board finds that with regard to Charge One, the Board unanimously finds that the piece of machinery was operated in an unsafe manner and, therefore, upholds the allegations contained in Charge One contained in the petition.
The Board, by a two to one vote, member Dillona two to one vote, dismisses finds that thefinds that present under the influence is not the same thing and, therefore, finds that the State has failed to upholdhas failed to prove its burden under Charge Two, and with member Dillon dissenting, that charge is dismissed.
The Board finds that contributing factors in the accident were lack of lighting on the back of the forward equipment and takes into consideration that the rules and practices in this mine were changed to require significantly different lighting and reflectionreflective materials, the fact that the front motor did not communicate that they had stopped and their location when they stopped, and the fact that unfortunately the victim in this case placed himself in a dangerous and inappropriate location. Taking into consideration all of those factors, the Board decertifies Mr. Coulson for a period of 90 days, including and counting the period that he's already been decertified. The objections and exceptions of any aggrieved party is hereby preserved.
On March 24, 2009, in the writ of prohibition action, the Board filed a Motion to Dismiss and Answer. The circuit court conducted a hearing in that action on May 4, 2009.
On May 7, 2009, the OMHST filed a Verified Petition for Emergency Stay, Notice of Intent to Appeal and Writ of Mandamus with the circuit court, because the final order in the underlying decertification matter had yet to be entered by the Board. On June 18, 2009, the circuit court entered an order granting the mandamus and petition for emergency stay. The circuit court directed the Board to enter its final order on or before July 2, 2009, and stayed re-issuance of Mr. Coulson's miner certification pending the final order of the Board on the appeal of the underlying decertification matter.
On June 29, 2009, the Board entered its final order in the underlying decertification matter wherein the Board set forth in writing its findings of facts and conclusions of law regarding its ninety-day decertification of Mr. Coulson. The Board reiterated its prior oral ruling that the evidence showed that Mr. Coulson unsafely operated the locomotive *286 at the time it collided with trip dollies and caused Mr. Goudy's death, but that the OMHST had failed to carry its burden of proving that Mr. Coulson was under the influence of an intoxicant.
On July 24, 2009, the circuit court issued an Order granting the Board's motion to dismiss in the writ of prohibition action. Then, on July 29, 2009, the OMHST filed a Petition for Appeal and requested a briefing schedule in the Circuit Court of Kanawha County in the decertification matter. On January 29, 2010, the circuit court entered its final Order in the decertification action upholding the Board's decision.

II. Standards of Review
This consolidated appeal involves both the writ of prohibition action brought by the OMHST and the appeal of the OMHST regarding the circuit court's affirmance of the Board in the decertification matter. Regarding the circuit court's dismissal of the writ of prohibition action, the Court has held that "[t]he standard of appellate review of a circuit court's refusal to grant relief through an extraordinary writ of prohibition is de novo." Syl. Pt. 1, State ex rel. Callahan v. Santucci, 210 W.Va. 483, 557 S.E.2d 890 (2001).
Further, upon the appeal of an administrative order, the Court is bound by the statutory standards found in West Virginia Code § 29A-5-4 (2007), which provides for a de novo review of questions of law, with findings of fact by the administrative officer being accorded deference unless found to be clearly wrong. See Syl. Pt. 1, Muscatell v. Cline, 196 W.Va. 588, 474 S.E.2d 518 (1996).

III. Discussion of Law

A. Denial Writ of Prohibition
The first issue is whether the circuit court erred in failing to issue a writ of prohibition concerning the Board's requirement that the OMHST make proper application with the Board before invoking the procedures for temporarily suspending a certified person's certificate. The OMHST contends that the circuit court, in refusing to issue a writ, erred in determining that the Board had the inherent power to require the Director of the OMHST to make proper application before temporarily suspending a miner's certification. In contrast, the Board asserts that the case is moot, because it determined that Mr. Coulson's certification should be suspended for ninety days. Further, the Board maintains that an appeal was possible, even though the order was interlocutory. Finally, the Board argues that as a quasi-judicial agency, it enjoys implied judicial powers to preserve its jurisdiction and effect its judgments. Thus, the Board maintains that it properly could require that the OMHST submit a proper application to it before suspending a certification.
The Court begins by determining whether the writ of prohibition was rendered moot by the Board's ultimate ninety-day suspension of Mr. Coulson's certificate. As the Court has previously stated:
A moot case generally cannot properly be considered on its merits. "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, State ex rel. Lilly v. Carter, 63 W.Va. 684, 60 S.E. 873 (1908). Accord Syl. pt. 1, Tynes v. Shore, 117 W.Va. 355, 185 S.E. 845 (1936) ("Courts will not ordinarily decide a moot question."). Nevertheless, a court may determine that an otherwise moot case may be considered due to the nature of the issues raised or the manner in which such issues are presented. See Syl. pt. 1, Israel v. Secondary Schs. Activities Comm'n, 182 W.Va. 454, 388 S.E.2d 480 (1989) ("Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the *287 appellate level because of their fleeting and determinate nature, may appropriately be decided.").
Alternatively, although changes may occur during the course of litigation that typically would render a case moot, the particular circumstances attending such changes may preserve the merits of the case so as to save it from mootness and to permit its consideration by the presiding tribunal. See Hart v. National Coll. Athletic Ass'n, 209 W.Va. 543, 548, 550 S.E.2d 79, 84 (2001) (per curiam) ("[T]he simple fact of apparent mootness, in and of itself, does not automatically preclude our consideration of [a] matter."). Thus, a case may survive mootness upon a change of circumstances. "When collateral effects of a dispute remain and continue to affect the relationship of litigants, the case is not moot." Firefighters Local [Union No. 1784 v. Stotts], 467 U.S. [561], at 585, 104 S.Ct. [2576], at 2591, 81 L.Ed.2d 483 (O'Connor, J., concurring) (footnote and citations omitted). A case also may survive mootness despite a change in party status. "As long as the parties have a concrete interest in the outcome of the litigation, the case is not moot[.]" Firefighters Local, 467 U.S. at 571, 104 S.Ct. at 2584(citation omitted). Finally, "[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review." Syl. pt. 1, State ex rel. M.C.H. v. Kinder, 173 W.Va. 387, 317 S.E.2d 150 (1984).
In any event, once the issue of mootness has been raised, "[t]he `heavy burden of persua[ding]' the court that the [case has been rendered moot] lies with the party asserting mootness." Friends of the Earth [v. Laidlaw Environmental Services (TOC), Inc.], 528 U.S. [167], at 189, 120 S.Ct. [693], at 708 [145 L.Ed.2d 610 (2000)] (quoting [United States v.] Concentrated Phosphate, 393 U.S. [199], at 203, 89 S.Ct. [361], at 364 [21 L.Ed.2d 344 (1968)]).
State ex rel. Bluestone Coal Corp. v. Mazzone, 226 W.Va. 148, 156, 697 S.E.2d 740, 748 (2010).
The OMHST makes a compelling argument for why the issue surrounding the writ of prohibition was not mooted by the Board's determination regarding Mr. Coulson's decertification for ninety days. Specifically, the OMHST argues that even though Mr. Coulson's case was resolved,
charges for decertification are filed by OMHST with the Board frequently. Each time a charge of decertification is filed with the Board, the Board must evaluate the charge and determine whether or not a breach of duty has been stated. If so, the Board issues its probable cause order. The Board utilizes the same boilerplate probable cause order containing the same "application" language that is at issue in this case. Therefore, this matter will continue to be repeated as other miners are issued temporary suspension notices because the Board does not have the inherent or implied authority to alter the procedures found in the rule and, therefore, will continue to exceed its legitimate powers.
Moreover, since the Board has not expressed in any manner what type of "application" it desires, OMHST could conceivably always fail to make "proper application" until such time as the Board is required to define what "proper application" means.
Conversely, the Board responds by stating that the fact that the Board "might" apply the application requirement in a future case does not have anything to do with this case. The Board, with no explanation, contends that this is not a case that is capable of repetition. Finally, the Board argues that its imposition of a ninety-day suspension of Mr. Coulson's certificate caused the temporary suspension to become moot.
Upon review of the issue raised in the writ of prohibition and the real potential of reoccurrence of the issue of "proper applications" in cases involving the temporary suspension of a miner's certificate pending a final evidentiary hearing, the Court concludes that the Board failed to carry its heavy burden in establishing that the case is moot.
*288 Consequently, the Court turns to a review of whether the circuit court erred in refusing to issue a writ of prohibition and instead dismissing the action. While the Court's review of the circuit court's refusal to issue a writ of prohibition in this case is de novo, the Court is guided by certain fundamental principles applicable to the issuance of any writ of prohibition. First,
"[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, Crawford v. Taylor, 138 W.Va. 207, 75 S.E.2d 370 (1953).
Syl. Pt. 1, State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders, 226 W.Va. 103, 697 S.E.2d 139 (2010). Next,
[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.
Syl. Pt. 4, in part, State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996).
The Court's examination of whether a writ of prohibition should have been issued by the circuit court begins with a review of the relevant law, including statutes, rules and case law, that govern the temporary suspension of a miner's certificate pending the resolution of charges brought against a miner. To that end, there are no statutory provisions regarding the temporary suspension of a miner's certification.
This Court, however, addressed the issue of a temporary suspension of a miner's certificate in State ex rel. Perry v. Miller, 171 W.Va. 509, 300 S.E.2d 622 (1983). In Perry, this Court held in syllabus point two that:
Where an administrative agency is given the power to license in an area that has a direct impact on the health or safety of the members of the public including employees of a given industry, such agency possesses the power to temporarily suspend such license without the necessity of holding a presuspension hearing when such suspension is necessary for health or safety reasons.
Id. In so holding, the Court stated that
[w]hile W. Va.Code, 22-1-30,[8] provides for a formal hearing procedure for revoking or suspending the certificate of a mine foreman, assistant mine foreman, fire boss, or any other certified person, we do not believe that based on the foregoing law that this section precludes the Director from issuing a temporary suspension pending the formal hearing procedure. It would be a gross anomaly if the Director, when confronted with serious health and safety violations on the part of an individual whom he is required to certify as being competent, could not temporarily suspend such individual's license. To adopt any alternative would be not only risking the lives and safety of the employees who are protected by the statute but would expose the employer's plant and equipment to the possibility of serious damage or neglect. This would run counter to the clear and unequivocal legislative policy which we have outlined in note 3.
Id. at 515, 300 S.E.2d at 628 (footnote added). The Court directed the then-Director of the OMHST to promulgate regulations governing the procedure to be followed when a *289 temporary suspension of a miner's or certified person's certificate was being sought by the OMHST. Id. at 516, 300 S.E.2d at 629.
In response to Perry, the OMHST promulgated "Procedures for Temporary Suspension of Certificates Issued to Persons Pursuant to Chapter 22A of the Code of West Virginia," which became effective on September 11, 1983. See W. Va.C.S.R. §§ 37-2-1 to -2. Once charges for violating statutory duties are brought against a miner, who is certified, by the OMHST, these procedures require the Board first to make a probable cause determination that a miner has violated statutory duties before the OMHST can temporarily suspend a miner's certificate. W. Va.C.S.R. § 37-2-2.1. Other than the probable cause determination by the Board, there is no requirement that the OMHST submit a "proper application" to the Board prior to suspending the certificate. Rather, West Virginia Code of State Rules § 37-2-2.2 simply provides that
[t]he Commissioner [now Director] may order the temporary suspension of the certificate of any person certified pursuant to Chapter 22A of the Code of West Virginia, pending full evidentiary hearing before the Board of [A]ppeals if an investigation by authorized representatives of the Commissioner reveals that:
(a) The certified person was active in the capacity which required or requires[ ] the certification issued by the Commissioner; or
(b) Such certified person is, or was, assigned by the operator or operator's agent to perform duties set out in the Code or regulations; and
(c) Such certified person failed and/or neglected to perform such statutory or regulatory duties; and
(d) Such failure and/or neglect of duty resulted in a finding by an authorized representative of the Commissioner of a violation of a health and safety standard of the Code or regulations; and
(e) Such violation of a health and safety standard resulted in the occurrence or high likelihood of the occurrence of the event against which the standard is directed or designed to prevent.
W. Va.C.S.R. § 37-2-2.2. "The temporary suspension shall be effective upon issuance by the Commissioner[.]" Id. The OMHST is required to notify the certified person in writing of the temporary suspension. Id. at § 37-2-2.3.
Absent from the foregoing procedures is any requirement that the OMHST submit a "proper application" to the Board before temporarily suspending a certificate. The Board argues that by "proper application" it means "(and desires)[ ] official noticehowever stylized, formatted, colored or designed." Unfortunately, the Board's "desires" are not included in the express rules governing the process for temporarily suspending a certificate. Notwithstanding the lack of any procedural rule, the record is unequivocal that the Board received notice of the OMHST's temporary suspension of Mr. Coulson's mining certificate as the Board was copied on the letter sent to Mr. Coulson notifying him of the temporary suspension. Further, the Board is on notice that once probable cause is determined, a miner's certificate is subject to temporary suspension by the Director of OMHST pursuant to the provisions of West Virginia Code of State Rules § 37-2-2.2.[9]
Undeniably, West Virginia Code of State Rules § 37-2-2.4 provides that the West Virginia Coal Mine Safety Board of Appeals can modify an order of the West Virginia Office of Miners' Health, Safety, and Training temporarily suspending a certified person's certificate. The Court, however, holds that the Coal Mine Safety Board of Appeals exceeds its legitimate powers when it modifies an order of temporary suspension of a certified miner's certificate based upon the imposition of an additional procedural requirement that the Director of the West Virginia Office of Miners' Health, Safety, and Training must make a proper application *290 with the Coal Mine Safety Board of Appeals prior to ordering the temporary suspension of a certified person's certificate when such requirement was not contemplated by the procedural guidelines set forth in the West Virginia Code of State Rules §§ 37-2-1 to -2 (1983).
Accordingly, the Court concludes in the case sub judice that the Board clearly erred and exceeded its legitimate powers by relying upon its position that the OMHST is required to submit to it a "proper application" in its decision to modify the OMHST's temporary suspension of Mr. Coulson's certificate, as this additional requirement was not supported by any statutory or regulatory authority. The Board clearly impeded the ability of the OMHST to temporarily suspend a miner's certificate by imposing an additional, arbitrary procedural requirement without any legal basis. See Perry, 171 W.Va. at 515, 300 S.E.2d at 628.
Having found that the modification of the OMHST's temporary suspension of Mr. Coulson's certificate was clearly erroneous, we turn to the remaining factors that must be examined in order to determine whether the lower court erred in failing to issue the writ of prohibition in this case. See Hoover, 199 W.Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4.
To that end, the next issue is whether the circuit court erred in determining that an appeal was an adequate remedy. The OMHST argues that the Board's order dismissing the action because of the failure to submit a "proper application" was a non-appealable interlocutory order, thereby making the issuance of a writ of prohibition appropriate. The circuit court found that the OMHST had a statutory right to appeal the order based upon two statutory provisions. See W. Va.Code § 22A-1-19 (2010) and W. Va.Code § 22A-5-2 (2010). West Virginia Code § 22A-1-19 provides that
[a]ny order or decision issued by the director under this law, except an order or decision under section fifteen [§ 22A-1-15] of this article[10] is subject to judicial review by the circuit court of the county in which the mine affected is located or the Circuit Court of Kanawha County upon the filing in such court ... of a petition by any person aggrieved by the order or decision praying that the order or decision be modified or set aside, in whole or in part, except that the court shall not consider such petition unless such person has exhausted the administrative remedies available under this law and files within thirty days from the date of such order or decision.
W. Va.Code § 22A-1-19(a)(footnote added). Additionally, West Virginia Code § 22A-5-2(a) makes the judicial review of decisions of the Board available and conducted in the same manner as set forth in West Virginia Code § 22A-1-19. The order regarding Mr. Coulson's certification was subject to appeal; however, this factor alone is not determinative of whether a writ should issue.
The erroneous addition of the procedural requirement by the Board of a "proper application" has the potential to be repeated every time the Director of the OMHST orders the temporary suspension of a miner's certification. See Hoover, 199 W.Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. Moreover, this potential for reoccurrence also could necessarily manifest a persistent disregard by the Board of the clear procedural law set forth in the West Virginia Code of State Rules §§ 37-2-1 to -2. See Hoover, 199 W.Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. Finally, the circuit court's failure to correct the Board's decision to reverse the OMHST's temporary suspension of Mr. Coulson's certificate raises a new and important problem. Specifically, the OMHST was trying to protect the health and safety of other miners by ensuring that Mr. Coulson did not work pending a final administrative hearing given the gravity of the charges against Mr. Coulson that stemmed from an accident which caused the death of a fellow miner. See Id.
Thus, the Court concludes that the circuit court was presented with sufficient evidence of the majority of factors needed to issue a writ of prohibition against the Board in this case, and erred in failing to do so.

B. Evidence of Intoxication
The next issue is whether there was sufficient evidence presented by the OMHST *291 to support a finding that Mr. Coulson was under the influence of an intoxicant at the time of the fatal accident. Specifically, the circuit court, in upholding the Board's dismissal of the intoxicant charge, found that the OMHST did not carry its burden and "showed simply that Mr. Coulson had ingested an unprescribed drug at some time in the recent past following the incident and that he did not appear impaired to his coworker Gerald Louden[,]" in addition to the assistant who took Mr. Coulson's urine sample "never mention[ing] in his testimony that Mr. Coulson appeared impaired." The OMHST argues that the circuit court erred in affirming the Board's determination that the OMHST failed to establish by a preponderance of the evidence that Mr. Coulson was under the influence of an intoxicant at the time of the accident.
The rule under which Mr. Coulson was charged provides that
[n]o persons shall at any time ... enter any mine or work area of any mine while under the influence of intoxicants. For the purpose of enforcement of this paragraph the word "intoxicant" shall mean ... a controlled substance as defined in West Virginia Code Chapter 60A, Article 1, Section 101(d) not specifically prescribed by a physician who is fully aware of and has taken into account the job duties the person is expected to perform.
W. Va.C.S.R. § 36-22-4.3; see W. Va.Code § 22A-2-57(c). Further, West Virginia Code of State Rules § 36-22-4.4 provides:
For purposes of enforcement of Section 4.3 of these regulations, an operator shall refuse entry into a mine or remove from the mine any person whom the operator has a reasonable cause to believe is under the influence of intoxicants.... Reasonable cause shall be determined by the existence of one or more of the following conditions:
(1) Odor of alcohol or other intoxicant about the individual or on his breath;
(2) Abnormally slurred speech, stammering, stumbling, weaving, or other loss of motor coordination;
(3) Unexplained animated signs of intoxication or influence [of] drugs on the individual;
(4) Other discernable signs of intoxication or influence [of] drugs on the individual.
W.V.C.S.R. § 36-22-4.4.
Under the foregoing rules, visible signs of intoxication are certainly important in ascertaining whether "reasonable cause" exists for an operator to believe a miner is under the influence of intoxicants. "Other discernable signs of intoxication or influence [of] drugs on the individual[,]" however, are equally important. Id.
When reviewing the evidence regarding whether Mr. Coulson was under the influence of an intoxicant, both the Board's and the circuit court's focus were on what effect the drugs oxycodone and hydrocodone had on Mr. Coulson. There was no testimony that Mr. Coulson appeared to be impaired or "under the influence" of an intoxicant at the time of the accident. According to the testimony of Dr. Lynn, from the toxicology test performed on Mr. Coulson, all that can be shown from the results is that Mr. Coulson had ingested both hydrocodone and oxycodone prior to the accident. Dr. Lynn could not make specific evaluations about Mr. Coulson's level of impairment at the time of the accident. Dr. Lynn did note in his testimony, however, that both hydrocodone and oxycodone were classified as opiates and have ramifications, such as "warnings on the opiate prescription say, `Do not operate heavy machinery, do not drive cars[.]'"
Notwithstanding, Dr. Lynn's inability to determine whether Mr. Coulson was under the influence, as well as the one worker's testimony that Mr. Coulson did not "appear" to be under the influence of any intoxicant, the OMHST argues that the uncontroverted evidence was that Mr. Coulson had ingested both oxycodone and hydrocodone prior to the accident. There were measurable amounts of both drugs in Mr. Coulson's system almost four hours after the accident. Further, the OMHST maintains that other evidence introduced during the hearing established that Mr. Coulson was under the influence of an intoxicant. For instance, the evidence showed that Mr. Coulson was unaware of his location in the mine at the time of the accident, even though he had worked there for years. Further, Mr. Coulson failed to communicate with other crew members that he *292 knew he was following just prior to the accident to establish the location of the miners ahead of him. The evidence also showed that even though Mr. Coulson acknowledged Mr. Goudy's signal to stop, Mr. Coulson did not even slow down the locomotive he was operating, causing the coupler of the locomotive to wedge over the top of the dollies that he struck which resulted in a fellow miner's body being severed in half. The most compelling evidence, however, is the fact that even the Board concluded that Mr. Coulson was operating the locomotive in an unsafe manner resulting in a man's death. These facts are clearly discernable signs the Appellee, Mr. Coulson, was under the influence of an intoxicant.
The OMHST only has to show by a preponderance of the evidence that Mr. Coulson was under the influence of an intoxicant. W. Va.Code § 22A-1-31(a). The circuit court, and the Board, focused solely on the lack of any outward or visible physical signs of intoxication caused by the drugs in Mr. Coulson's system in reaching their respective conclusions that the OMHST failed to carry its burden. Both the circuit court, and the Board, ignored the actions Mr. Coulson exhibited that caused another miner's death and his failure to explain why he did not know where he was in the mine at the time of the accident and why he signaled that he was stopping the locomotive when the victim signaled to him to stop, yet he did not even slow down. The circuit court and the Board seemingly ignored the lack of evidence to explaining these anomalies that resulted in the tragic accident that took the life of Mr. Goudy.
Accordingly, the Court reverses the decision of the circuit court upholding the Board's determination that the OMHST failed to carry its burden of proving that Mr. Coulson was under the influence of an intoxicant in violation of West Virginia Code of State Rule § 36-22-4.3.[11] The legal conclusion reached by the circuit court, as well as the Board, that the Appellee, Mr. Coulson, had to demonstrate visible signs of being under the influence of an intoxicant in order to be found in violation of West Virginia Code of State Rule § 36-22-4.3, as a matter of law, was erroneous.

IV. Conclusion
Based upon the foregoing, the decision of the circuit court dismissing the writ of prohibition is reversed and remanded for entry of an order consistent with this opinion. Likewise, the decision of the circuit court upholding the Board's determination that the OMHST failed to carry its burden in showing that the Appellee, Mr. Coulson, was under the influence of an intoxicant is reversed and remanded for further proceedings involving the assessment of penalties against Mr. Coulson pursuant to West Virginia Code § 22A-1-31 consistent with the foregoing opinion.
Reversed and remanded.
NOTES
[1] Only the OMHST and the Board submitted briefs and argued their respective positions on the issues raised in the two appeals before the Court.
[2] The level of oxycodone was 408 ng/mL, and the level of hydrocodone was 1520 ng/mL. William Randall Lynn, Ph.D., the director of the lab at Lab Corp, testified that neither amount was "especially high[,]" but that he could not testify as to what kind of impairment the drugs had on Mr. Coulson, as people can build up a tolerance to these drugs.
[3] On November 3, 2008, McElroy Mine terminated Mr. Coulson's employment. On November 5, 2008, the Union filed a grievance regarding the termination on Mr. Coulson's behalf. Mr. Coulson's termination is not the subject of the instant appeal.
[4] The provisions of West Virginia Code § 22A-1-31 govern the procedures to be utilized in the withdrawal of a certified person's certification.
[5] West Virginia Code § 22A-2-43(g) provides that "[m]achine runners and helpers shall use care while operating mining machines."
[6] West Virginia Code of State Rules § 36-34-3.2 provides that "[m]ining equipment shall be operated safely, taking into consideration the condition of the haulage road, limit of visibility, height of coal seam, and the size of equipment."
[7] West Virginia Code of State Rules § 36-18-4.1 provides that "[e]quipment operators shall exercise care in the operation of the equipment entrusted to them...." The rules set forth in the West Virginia Code of State Rules §§ 36-18-1 to -7 were filed on February 20, 2008 and became effective on January 1, 2009. There was no challenge raised during any proceeding below regarding the applicability of this particular rule to the accident that occurred in this matter.
[8] This was the former statute pertaining to the withdrawal of certification, which is now found in West Virginia Code § 22A-1-31.
[9] Even though the Board had notice of the temporary suspension, it did not see fit to provide any notice to the OMHST concerning Mr. Coulson's appeal of his temporary suspension, nor did the Board provide to the OMHST any opportunity to respond to Mr. Coulson's appeal prior to the Board acting upon Mr. Coulson's request for modification of his temporary suspension.
[10] West Virginia Code § 22A-1-15 governs findings, orders and notices relating to "imminent danger" in the mine, it does not govern a certified person's certificate.
[11] Due to the Court's reversal on both the writ of prohibition and the OMHST's failure to carry its burden of proof regarding Mr. Coulson being under the influence of an intoxicant, the Court finds that there is no need to address the OMHST's argument regarding the sufficiency of the penalty.